### MONTGOMERY and another *vs.* MORRIS.

1. Testimony of a witness, taken by interrogatories, is not obnoxious to the Act of 21st February, 1850, "To regulate the testimony of Attorneys at law," when it does not appear to the Court that the witness was the attorney-at-law of the party against whom the evidence is sought to be used, or that the facts testified to were acquired by him during the existence, and by reason of the relation of attorney and client.

2. M. agreed with M. for the purchase of her land and negroes at the price of $8,000 00, executed a bill of sale to him for the negroes, and delivered to him her title deeds for the land, retaining possession of the property until the purchase-price of the property was settled; subsequently, to induce M. to cancel the trade, give up the bill of sale to the negroes, and the title deeds to the land, M., the vendor, and another, executed to M.; the purchaser, their notes for the sum of $450 00, and the bill of sale and deeds were returned to M., and the trade cancelled. *Held :* That this was a sufficient consideration for the notes so given, although the bill of sale and deeds might have been fraudulently obtained in the first place.

3. When a fraud has been committed by one upon another, and it has been settled by the parties, with a full knowledge thereof, such settlement is conclusive.

Certiorari from Bibb Superior Court. Decided by Judge LAMAR, at the November Term, 1860.

The facts of this case are substantially as follows:

James S. Morris bargained with Nancy Montgomery and Mary Duncan for a plantation in the county of Baldwin, and five negroes, for which Morris agreed to pay $8,000 00. Pursuant to the agreement and contract, Morris paid over to Mrs. Montgomery and Mrs. Duncan some money, and they turned over to him the title deeds of the plantation, and Mrs. Montgomery executed and delivered to him a bill of sale for the negroes, which were then levied on by virtue of sundry *fi. fas.* against Mrs. Montgomery. Morris was to pay off the *fi. fas.* and all other demands against Montgomery and Duncan, and then pay the balance of the $8,000 00 to them.

On the day of sale, and when the negroes were offered for sale, Morris announced to the sheriff and bystanders, that he had the means, and was ready to pay off all the *fi. fas.* and all other demands against Montgomery and Duncan; but, for some cause, the sheriff and plaintiffs in *fi. fas.* refused then to receive the money, and the sale was postponed. This occurred on the first Tuesday in January, 1860.

It was then agreed, that so soon as Morris returned from a trip out West, which he was then about to take, that he should return to Milledgeville and get the negroes and bring them away.

Morris paid no money, except what he advanced to Montgomery and Duncan, nor was there any deed to the plantation executed to him.

After Morris returned from the West, and before he went back to Milledgeville, Mrs. Montgomery and Mrs. Duncan called on him at his house in Marietta, when it was agreed that Morris should give up the bill of sale and title deeds, and that the whole sale should be cancelled, in consideration of which, Mrs. Mongomery and Duncan paid Morris some money, and also executed and delivered to him nine promissory notes, signed by them, for $50 00 each.

Afterwards, Morris sued out attachments on these notes, returnable to a Justice's Court of Bibb county, and Montgomery and Duncan pleaded that the notes were without consideration.

On the trial of these cases in the Justice's Court, the depo-

sitions of Wm. McKinley were read in evidence over the objection of plaintiff's counsel, that the depositions disclosed facts, of which the witness obtained a knowledge during the existence, and by reason of the relation of attorney and client between the witness and plaintiff.

The jury, in the Justice's Court, found for the defendants.

The cases were then carried to the Superior Court of Bibb county, by certiorari.

The Superior Court sustained the certiorari, and ordered a new trial, on the ground that the Justices erred in admitting McKinley's testimony, and on the ground that the jury found contrary to evidence, as to a want of consideration in the notes.

This judgment is the error alleged.

LANIER & ANDERSON for plaintiff in error.

STUBBS & PATTON *contra.*

*By the Court.*—LYON, J., delivering the opinion.

Two questions are made by the record in this case :

1. Whether the interrogatories of the witness, William McKinley, were admissible as evidence ?

2. Whether there was sufficient evidence of a consideration in the notes which were the foundation of the suits in the Justice's Court, to authorize a recovery on them by the plaintiff?

(1.) We think the interrogatories were admissible as evidence. The objection to them is, that the witness, McKinley, was the attorney of Morris, and that his statements, or evidence, is in conflict with the Act of 21st February, 1850, " To regulate the testimony of Attorneys at Law." The record does not support the objection. It does not appear that the witness was the attorney of Morris, or that the facts sworn to by him were acquired during the existence and by reason of that relation, all of which is necessary to exclude the testimony under that Act. As much was said in the argument as to the manner of this witness, we are constrained

to remark, in respect thereto, that in this, the testimony was very objectionable—not enough so to require the Court to exclude the same from the jury, but sufficiently so to greatly impair its weight and credit before them ; and if a jury, under the circumstances, should wholly discredit evidence so given, we should never interfere with their finding on that account, however material and important the testimony may be.  However well satisfied a witness may be, that the party against whom he is testifying is a desperate speculator and adventurer, trying to obtain an undue advantage, or is wrong upon the merits, it is not his business to adjudge these questions, or to thrust his opinions thereof on the tribunal whose business it is to try the case, but to state what he does know, as strongly as it exists, without that flippancy and bias for one of the parties that so evidently marks this testimony from one end to the other.

(2.) As to the other question : Was there sufficient evidence of a consideration in the notes before the jury to require them to find for the plaintiff?  Or, to state the question more exactly : Was there sufficient evidence *of a want of consideration* in the notes, to justify the finding as made ?  And to this, we reply, that there was not.  The only evidence offered as to the consideration of the notes, was that of the plaintiff, Morris, given in reply to interrogatories sued out for him specially, on the application of the defendants in the Justice's Court.  The witness, McKinley, knew nothing of the giving of the notes, or of their consideration ; he testifies to certain negotiations by Morris for the purchase of the lands and negroes of Mrs. Montgomery, that occurred in Milledgeville, on the first Tuesday in January, 1860, and the facts that transpired at that time and place, in respect to the intended trade, within his knowledge.  The notes were not given at that time, but subsequently, on the 17th day of March, 1860.  Hence, his testimony can have no weight whatever, to overcome the legal presumption in favor of the fairness and sufficiency of the consideration of the notes, that arises upon the face of the papers themselves.  From the answers of Morris, we learn that Morris agreed, on the

first Tuesday in January, 1860, to purchase of Mrs. Montgomery her land and negroes, at the price of eight thousand dollars, to which she assented, and, in pursuance thereof, executed to him a bill of sale of the negroes, and delivered to him her title deeds for the land. It was agreed, further, that on the return of Morris from a trip to the West, that he then intended, he should pay said sum of money in the manner agreed upon, when she should deliver to him possession of the property. On the 17th day of March, after this agreement, the defendants, Mrs. Montgomery and Mrs. Duncan, met Morris at his house in Marietta, and upon their own application, executed to him their notes, amounting to the sum of four hundred and fifty dollars, to induce him to give up the bill of sale that Mrs. Montgomery had previously executed to him for the negroes, the title deeds for the land, and to cancel the whole agreement; and this, we think, was a sufficient consideration. The plaintiff, Morris, by the bill of sale, had an interest in, if not the legal title to, the negroes. Whether he could have recovered the negroes and enforced the agreement, it is not now material to inquire. The bill of sale and agreement might have been procured by the most fraudulent practices upon an illiterate and weak old woman, but it was to the interest and benefit of Mrs. Montgomery to be relieved from the effect of that agreement, to get back her title deeds to her lands, and to have the bill of sale she had made, cancelled. To have this cloud, to say the least of it, over her property removed, was her object, and to accomplish this, she gave these notes, and effected her purpose. This was the benefit to her in the trade, which has always been held sufficient to support a promise made in consequence. There is not the slightest evidence that any fraud or misrepresentation was practiced to induce the giving of the notes. This is not pretended, but it is claimed, that the procuring this bill of sale, agreement and title, in the first place, was done by the fraudulent practices of a sharp trader upon a weak, ignorant, unsuspecting, and innocent old woman. Without intending to say that this is true, still, if it were, these notes would still be

good and valid against the maker, for it was legitimate, and to her interest, to buy or settle herself out of the scrape into which she had fallen, and no doubt made a good trade in doing so.

3. Putting the case exclusively on this footing, the promise was binding on the maker, for that is directly within the rule laid down by this Court, in Ham *vs.* Hamilton, 29 Ga., 41— that is, " that parties may settle frauds as well as anything else, if they act with knowledge of the facts; and such a settlement is as effectual, when made by the parties, as when made by the Courts;" and this, we think, an express adjudication of the main question in this case, and conclusive.

Judgment affirmed.