A93A2558. JENNINGS v. LIFE INSURANCE COMPANY OF GEORGIA.
(441 SE2d 479)

SMITH, Judge.

Annie Jennings brought this action to recover the proceeds of a policy of life insurance issued by Life Insurance Company of Georgia. The insurer answered, denying coverage because of material misrepresentations regarding the health of the insured, Jennings's deceased husband. The trial court granted the insurer's motion for summary judgment.

The record reveals that both Jennings and her husband applied for policies. Mary Salaam, a licensed practical nurse and the manager of a company administering paramedical examinations for life insurance applications, came to the home of Mr. and Mrs. Jennings to perform the examinations required for the application. Mrs. Jennings is blind, and Salaam verbally posed questions printed on a "statement to medical examiner" to both Mrs. Jennings and her husband and recorded their answers.

The death certificate indicates Mr. Jennings died from cardiac arrest on January 15, 1991, approximately seven months after the application was completed. It is undisputed that he smoked for many years, although the number of cigarettes he smoked per day had declined in the last few years of his life. It is further uncontroverted that he suffered from asthma and diabetes, as well as high blood pressure. Mrs. Jennings testified at her deposition that her husband told Salaam he suffered from these conditions and that she thought he told her he smoked. Although the statement indicates the applicant suffered from hypertension, it reflects negative answers to the questions inquiring whether the applicant had smoked cigarettes or had ever been treated for asthma or diabetes.

In an affidavit submitted in support of the insurer's motion for summary judgment, Salaam stated she had conducted more than 1,000 paramedical examinations for life insurance applications since

1983 and never asked an applicant to sign a blank form. She asserted it was her "regular and consistent practice in all cases" to read the entire statement to the applicant, record the applicant's answers, present the completed statement to the applicant to examine before signing, and sign it herself only after the applicant had reviewed and signed it. Because she would not have signed it otherwise, she knew that she returned the completed statement to Mr. Jennings for review and signature.

In another affidavit, Tom Mills, senior underwriter for the insurer, stated that Mr. Jennings's undisclosed conditions were material to the risk, and had the company been informed of those conditions, it would not have issued the policy under the same terms and conditions.

1. Jennings first contends a genuine issue of material fact exists as to whether the insurer is estopped to deny coverage despite the written statement, because its agent, Salaam, received disclosures that would charge it with knowledge of Mr. Jennings's medical condition. We do not agree.

It is true that the evidence is in conflict regarding whether Jennings's husband told Salaam about all his medical conditions. However, this conflict is not material. Although Jennings did not remember that her husband signed the statement, the signed statement is in the record, and there is no suggestion either in the record or in briefs that it was forged. Moreover, Jennings testified that her husband was well educated and had no disability that would have prevented him from reading the statement before he signed it. "[T]he applicant is bound by the answers recorded on the application, whether written by him or by the agent, absent any fraud on the part of the agent in deceiving him as to what was in fact written down as answers, or in preventing him from reading and ascertaining what was written down. [Cits.]" (Emphasis omitted.) *Prudential Ins. Co. v. Perry,* 121 Ga. App. 618, 622 (1) (174 SE2d 570) (1970).

The statement also requires the applicant to declare that "I have read the above [statement to medical examiner] and my answers to the questions are true and correct to the best of my knowledge and belief." This declaration appears immediately above the applicant's signature line. Such a declaration "is formulated to prevent an applicant from asserting that he relied upon someone else, and to ensure that the declaration of truth is not the act of one whose insertion of material misrepresentations would be binding upon the company." (Citation, punctuation, and emphasis omitted.) *James, Hereford &c. v. Powell,* 198 Ga. App. 604, 607 (3) (402 SE2d 348) (1991).

The cases relied upon by Jennings indicate only that recovery under a policy has been permitted, despite material misrepresentations on the application, where the applicant was prevented from dis-

covering the false answers either by his own disability or by specific behavior on the part of the insurer's agent. See, e.g., *Mills v. Lloyds, London*, 201 Ga. App. 666 (411 SE2d 713) (1991) (applicant could not read); *Stillson v. Prudential Ins. Co.*, 202 Ga. 79 (42 SE2d 121) (1947) (agent completed application and presented it to applicant with all but signature portion covered). The evidence in this case does not suggest that either of these circumstances was present here. No reason appears why Mr. Jennings could not have discovered, had he read the statement before signing it, that the answers on the statement were not the ones he allegedly gave Salaam. See *Perry*, supra at 628 (2) (c).

Therefore, despite the conflict in the evidence regarding whether Salaam was informed of the applicant's medical conditions, the insurer was not estopped to deny coverage, and the trial court did not err in granting summary judgment to the insurer on that ground.

2. Jennings also contends the trial court erred in granting summary judgment to the insurer, because it made no showing of the materiality of any alleged inaccuracies in the statement. She maintains that Mills in his affidavit did not categorically deny that the insurer would have issued the policy had it known the undisclosed information; he stated only that the insurer either would not have issued the policy or would have issued the policy on different terms. This, she argues, made the materiality of the misrepresentation a jury question.

It is well established, however, that "[a] material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance. [Cit.]" *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853, 854 (386 SE2d 725) (1989). See OCGA § 33-24-7 (b) (3). Since this misrepresentation was clearly material to the risk, the trial court did not err in granting summary judgment to the insurer.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 18, 1994.

*Marilyn S. Bright*, for appellant.
*Rogers & Associates, Randall F. Rogers, Gorby & Reeves, Michael E. Fisher, Martha D. Turner*, for appellee.