A94A2272. LISTER et al. v. SCRIVER.
(456 SE2d 83)

McMURRAY, Presiding Judge.

Plaintiffs Thomas J. Lister and 690019 Ontario, Ltd. ("Ontario") brought an action against Richard L. Scriver (defendant), alleging defendant fraudulently induced a contract ("the agreement") whereby plaintiffs subsequently assigned $150,000 to defendant for the purpose of establishing and directing the affairs of ACA Joe of Savannah, Inc. ("ACA Joe Savannah"), a corporation intended to operate under a franchise authorizing the establishment of a retail clothing store in Savannah, Georgia. Plaintiffs not only allege that defendant breached the agreement by failing to properly acquire and assign corporate assets, they also allege defendant (individually and as a corporate officer) misappropriated corporate assets and fraudulently carried out the business of ACA Joe Savannah in violation of his fiduciary duty to plaintiffs. Defendant admits entering into an agreement with plaintiffs whereby the parties agreed to enter into a joint corporate venture to develop a retail clothing store in Savannah, but denies any wrongdoing stemming from the transaction and alleges (via counterclaim) that plaintiffs misappropriated certain assets of ACA Joe Savannah after the business venture failed and upon dissolution of the corporation. Defendant also asserted accord and satisfaction as a defense, claiming the parties resolved their differences before ACA Joe Savannah was dissolved. The case was subsequently heard by a jury before hotly disputed evidence. The result was a verdict in favor of plaintiff Ontario for $177,549 and in favor of plaintiff Lister for $108,238. The jury found for the plaintiffs on defendant's counterclaim. The evidence adduced at trial, construed in a light which favorably supports the jury's verdict, reveals the following:

In the fall of 1985, defendant met with Norman Burkowski, Mark McLean and Dave Boushay ("principals") in the City of Windsor,

Ontario, Canada. He was seeking funding to open a retail clothing store in Columbus, Georgia, similar to several such establishments defendant operated in the Atlanta area. Specifically, defendant informed the principals that for $100,000 he would form a corporation to operate such a business; that he would also contribute $100,000 in cash to such a corporation; that the corporation would be formed with authority to issue 100,000 shares of stock; that the principals would own 50 percent of the stock (50,000 shares) and that he would be the exclusive owner of the remaining 50,000 shares of stock. The principals' discussions with defendant continued through May 1986, principal Burkowski (apparently) acting as primary representative of the other principals.

In June 1986, the principals resolved to go through with the deal and agreed with defendant that Savannah, Georgia, would be the location of the proposed corporation's retail establishment. In the meantime, and unknown to principal Burkowski, defendant was negotiating a similar $50,000 transaction with plaintiff Lister, formerly a sales clerk at a retail establishment owned by defendant in Ontario, Canada. Defendant promised that if plaintiff Lister could raise $50,000, he would provide plaintiff Lister with a corporate title, a job and 25,000 shares of corporate stock. Defendant suggested that plaintiff Lister obtain the money from his parents.

In June 1986, the principals formed plaintiff Ontario to consummate their agreement with defendant and, during the latter part of June, they traveled from Canada to view the location in Savannah chosen by defendant for the retail store. However, defendant did not make good on his promise to show the location of the Savannah store, instead taking the principals on tours of several ACA Joe Savannah retail establishments in the Atlanta area. The principals (apparently) did not then know that defendant had not yet acquired a site for the Savannah store.

In July 1986, defendant contacted principal Burkowski and advised him that $30,000 was needed to purchase a franchise for the proposed store in Savannah and that plaintiff Ontario's contribution for the franchise would be $15,000. Plaintiff Ontario borrowed the money on a line-of-credit and delivered it to defendant. Unfortunately and unknown to plaintiff Ontario, defendant did not purchase the needed franchise for the retail store he planned to develop with plaintiff Ontario. Instead, he deposited the funds in his personal bank account and purchased franchise rights which were used for other stores developed by defendant in the Savannah area. Thereafter, defendant advised principal Burkowski that the $15,000 tendered for the franchise would be forfeited if plaintiff Ontario did not come up with the balance of the parties' agreement and, to this extent, plaintiff Ontario borrowed aggregate sums totaling $85,000 secured by

principal Burkowski's home and real estate held by plaintiff Ontario. Defendant promised that he would personally guarantee these loans. However, when the parties memorialized their agreement in writing on August 1, 1986, defendant did not include such a guaranty. Instead, the agreement only provided that ACA Joe Savannah (which was not yet formally incorporated) would provide plaintiff Ontario with monthly dividends sufficient to service said loans.

On August 5, 1986, unknown to plaintiff Ontario, defendant executed a lease agreement in his individual capacity for the purpose of establishing the retail establishment contemplated during negotiations with plaintiff Ontario. This lease provides defendant with $80,000 to renovate the retail space and an additional $25,000 loan, apparently an incentive for negotiating the lease. Defendant deposited the $80,000 designated for improvement of the lease premises in his bank account.[1]

On August 10, 1986, defendant entered into an agreement with plaintiff Lister whereby Lister raised $50,000 in cash (acquired in part via a loan secured by his parents' home) and gave the money to defendant in exchange for 25,000 shares of ACA Joe Savannah, a job managing the retail establishment recently set up by defendant in Savannah and a promise of becoming a corporate officer. At that time, plaintiff Lister was unaware of the agreement between defendant and plaintiff Ontario. He was led to believe that defendant owned 50 percent of the corporate stock in ACA Joe Savannah. Thereafter, defendant deposited most of plaintiff Lister's $50,000 contribution into his personal bank account and, on August 11, 1986, defendant formally incorporated ACA Joe Savannah.

Plaintiff Lister began managing an "ACA Joe" retail clothing store set up by defendant, working hard to overcome initial undercapitalization by defendant and depressed conditions at the shopping center where the store was located. The store managed by plaintiff Lister simply did not enjoy good pedestrian traffic and this deficiency was the result of unclean conditions at the shopping center and a corresponding low rate of occupancy by other retail tenants.

In June 1987, plaintiff Ontario first learned of defendant's transactions with plaintiff Lister and principal Burkowski and immediately contacted defendant to investigate. Defendant gave no good explanation and, as a consequence, principal Burkowski (and apparently others) traveled to Georgia and met with defendant and plaintiff

---

[1] Defendant testified that he informed principal McLean of the $80,000 allowance for improvements of the lease premises and principal McLean was called in rebuttal to challenge this testimony. However, the trial court refused to allow principal McLean's testimony because he was not listed as a witness on the pre-trial order. Plaintiff proffered the relevant rebuttal testimony outside the presence of the jury and moved for a mistrial.

Lister to resolve the matter. It was later determined that the best course would be to move toward closing the ACA Joe Savannah retail store. Thereafter, plaintiffs and defendant agreed to dissolve the corporation and allow plaintiffs to take the remaining assets of the corporation, i.e., whatever cash remained, the store's inventory and ACA Joe Savannah's franchise. However, before execution of this agreement, principal Burkowski discovered that defendant never acquired a franchise for the "ACA Joe" store managed by plaintiff Lister. He therefore decided not to go through with the deal struck with defendant and, on January 22, 1988, called an emergency meeting of the stockholders of ACA Joe Savannah. It was then resolved, with defendant's consent, to dissolve the corporation and liquidate its assets. Plaintiffs thereafter seized the assets of the corporation and used them in an unsuccessful attempt to establish another "ACA Joe" retail store in South Carolina.

After judgment was entered on the jury's verdict, defendant filed a motion for judgment n.o.v. or, alternatively, for a new trial. The trial court granted both of these motions and this appeal followed. *Held*:

1. Plaintiffs contend the trial court erred in granting a judgment n.o.v., arguing the evidence was sufficient to sustain the jury's verdict based on fraud, breach of fiduciary duty and accord and satisfaction.

" '[T]he primary question for determination is whether the evidence introduced, with all reasonable deductions therefrom demanded a verdict for the defendant, as the standards for granting a motion for judgment n.o.v. are the same as those governing direction of a verdict. (Cits.) (T)he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.' *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981). ' "While it is erroneous for a court to direct a verdict in favor of a particular party to the cause where there is an issue of fact, when the proved facts, viewed from every possible legal point raised by the evidence, would sustain no finding other than the one directed, i.e., where there is no issue of fact, then it is error to refuse to direct an appropriate verdict. (Cits.) Further, in giving consideration to a motion for judgment notwithstanding the verdict, the court is concerned substantially with the same principles of law as are applicable upon consideration of the motion for directed verdict. The question for determination is whether or not the evidence demands a verdict for mo-

vant (cits.), and if there is no evidence to support the verdict returned, denial of the motion is error." ' *City of Atlanta v. West,* 160 Ga. App. 609 (2) (287 SE2d 558) (1981). 'The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same.' *Pendley v. Pendley,* 251 Ga. 30 (302 SE2d 554) (1983)." *Miller & Meier & Assoc. v. Diedrich,* 174 Ga. App. 249, 250 (1) (329 SE2d 918), rev'd on other grounds at 254 Ga. 734, 735 (1) (334 SE2d 308).

(a) *Fraud.* " 'Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.' Code § 105-301[, now OCGA § 51-6-1]. 'Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.' Code § 105-302[, now OCGA § 51-6-2]. The elements essential to an action in tort for damages resulting from a material misrepresentation constituting fraud are: '(1) that the defendant made the representations; (2) that at the time he knew they were false (or what the law regards as the equivalent of knowledge); (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on such representations; (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.' *Brown v. Ragsdale Motor Co.,* 65 Ga. App. 727, 728 (3) (16 SE2d 176). See also *Brooke v. Cole,* 108 Ga. 251 (33 SE 849), and *Cosby v. Asher,* 74 Ga. App. 884, 886 (41 SE2d 793)." *McLendon v. Galloway,* 216 Ga. 261, 263 (2) (116 SE2d 208).

In the case sub judice, plaintiffs presented evidence that defendant, at the time they purchased the stock in ACA Joe Savannah, did not inform them of the separate stock transactions involving plaintiff Ontario and plaintiff Lister; that defendant assured plaintiff Ontario there were no stockholders of ACA Joe Savannah other than himself (indicating the same to plaintiff Lister); that defendant affirmed plaintiff Ontario's belief that he had made a $100,000 cash investment in the corporation and that defendant advised plaintiff Ontario that he needed $15,000 to purchase a franchise at a cost of $30,000. There was also evidence that defendant knew these representations were false; that defendant made these statements in order to induce plaintiffs to purchase the stock; that both plaintiffs purchased capital stock in ACA Joe Savannah because of their faith in defendant and because of their belief in the truth of his statements and that, by reason of the misrepresentations, ACA Joe Savannah's retail operation was worth substantially less than the stated value (at the time of the

stock transactions) of $200,000. Pretermitting other evidence authorizing a finding of deceitful conduct by defendant which damaged plaintiffs, this proof alone was sufficient to leave the question of fraud to the jury. See *State Farm Fire &c. Co. v. Fordham*, 148 Ga. App. 48, 50 (1), 51 (250 SE2d 843).

(b) *Accord and Satisfaction.* " 'Parties may settle frauds as well as anything else, if they act with knowledge of the facts; and such a settlement is as effectual when made by the parties, as when made by a court.' *Ham v. Hamilton*, 29 Ga. 40, 42 (1859). See also *Montgomery v. Morris*, 32 Ga. 173 (3) (1861). 'Even a fraud may be compromised, *provided the party had knowledge of its existence*, and entered into the agreement to have his rights springing from or growing out of it settled.' *Collins v. Collins*, 165 Ga. 198 (4) (140 SE 501) (1927)." (Emphasis supplied.) *Fraser v. C & S Bank of Fulton County*, 166 Ga. App. 804, 805 (2) (305 SE2d 494).

In the case sub judice, defendant claims the evidence is undisputed regarding the parties' resolution of all issues relating to his alleged deceitful acts. To this extent, we agree that it is undisputed that plaintiffs and defendant agreed to dissolve the corporation after discovery of defendant's alleged deceit, all parties then agreeing to close the ACA Joe Savannah store and allow plaintiffs to take the remaining corporate assets. However, defendant's assertion that this amounted to an accord and satisfaction (as a matter of law) ignores principal Burkowski's testimony that he did not learn of defendant's failure to acquire an ACA Joe franchise on behalf of ACA Joe Savannah until after the parties reached a settlement agreement. This term was certainly a material element of the parties' settlement agreement. Accordingly, the issue of an accord and satisfaction was properly for the jury. See *McLendon v. Galloway*, 216 Ga. 261, 263 (2), 264, supra.

(c) *Breach of Fiduciary Duty as Corporate Officer.* Although there is evidence which would authorize a finding that defendant breached his duty as an officer of ACA Joe Savannah (see *Quinn v. Cardiovascular Physicians, P. C.*, 254 Ga. 216, 217 (2) (326 SE2d 460)), we have difficulty determining whether a verdict would be proper in the case sub judice based on such liability since plaintiffs failed to press their stockholders' derivative action (as set out in the pre-trial order) against defendant. See *Quinn v. Cardiovascular Physicians, P. C.*, 254 Ga. 216, 218 (3), supra; *Dunaway v. Parker*, 215 Ga. App. 841, 845 (1) (453 SE2d 43). In any event, we deem it unnecessary to reach the issue in light of other holdings in this division. However, we note that defendant's liability as a corporate officer may be reasserted at a new trial upon leave of the trial court. See Division 2 of this opinion.

The trial court erred in granting defendant's motion for judgment n.o.v.

2. Next, plaintiffs contend the trial court erred in granting defendant's motion for new trial. We do not agree.

"Code Ann. § 6-1608[, now OCGA § 5-5-50] provides that '(t)he first grant of a new trial shall not be disturbed by the appellate court, unless the plaintiff in error shall show that the judge abused his discretion in granting it, and that the law and facts require the verdict notwithstanding the judgment of the presiding judge.' [As we stated earlier, the facts are hotly disputed in the case sub judice and plaintiffs have] shown neither abuse of the trial court's discretion [in this regard] nor legal and factual circumstances in this case which dictate judgment in [their] favor. 'When a trial court grants separate motions for judgment notwithstanding the verdict and for new trial on the general grounds, we interpret the grant of the motion for new trial to be conditional on the appellate court's vacating or reversing the judgment n.o.v. As the law and facts of this case do not demand a verdict for either party, this first grant of a new trial will not be disturbed on appeal.' *Helton v. Zellmer*, 238 Ga. 735, 736 (235 SE2d 35) (1977)." *Hicks v. American Interstate Ins. Co. of Ga.*, 158 Ga. App. 220, 225 (2) (279 SE2d 517).

3. The basis of plaintiffs' contention regarding the trial court's exclusion of rebuttal testimony of principal McLean is not likely to exist upon retrial. We therefore do not address this assertion.

4. In one enumeration of error, plaintiffs challenge the trial court's refusal to give 12 requested jury instructions. We will not address this enumeration since it is deemed abandoned as it is not supported by specific argument or citation of authority. See former Court of Appeals Rule 15 (c) (2), now Court of Appeals Rule 27 (c) (2). *Spivey v. Safeway Ins. Co.*, 210 Ga. App. 775, 778 (5) (437 SE2d 641). Further, these issues are an improper expansion of a single enumeration of error. *Brown v. State*, 205 Ga. App. 822 (1), 823 (423 SE2d 442).

5. Plaintiffs contend in a final enumeration of error that the trial court erred in directing the jury to disregard an earlier jury instruction covering plaintiffs' purported right to recover for invalid issuance of corporate stock. See OCGA § 11-8-104 (1). We do not agree. Neither plaintiff Ontario nor plaintiff Lister asserted such a right of recovery in the pre-trial order.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 17, 1995.

*Teddy R. Price, William G. Maston,* for appellants.
*Glass, McCullough, Sherrill & Harrold, Geoffrey H. Cederholm*

*III*, for appellee.