A97A1800. JACKSON NATIONAL LIFE INSURANCE COMPANY v. SNEAD.
(499 SE2d 173)

McMURRAY, Presiding Judge.

William E. Snead, Jr. filed suit against Jackson National Life Insurance Company seeking to recover benefits under a $250,000 life insurance policy issued on the life of his wife, Janice Snead, who died in a drowning accident within the two-year contestable period of the policy. The complaint also sought damages and attorney fees for the insurance company's bad faith refusal to pay.[1] Jackson National answered, admitting that it had issued a policy on Janice Snead's life but denying liability based upon the affirmative defense of material misrepresentation, OCGA § 33-24-7 (b). Specifically, Jackson National alleged that Janice Snead's failure to disclose on her application for the life insurance policy that she smoked cigarettes within the 12-month period preceding the application constituted a material misrepresentation sufficient to void the life insurance policy.

The case went to trial on June 5, 1995, and the jury returned a verdict in favor of Jackson National. On November 29, 1995, the trial court granted Snead's motion for a new trial on the general grounds, and a second trial commenced in June 1996. On retrial, the jury returned a verdict in favor of Snead for the face amount of the policy and found for Jackson National on the bad faith claim. The trial court denied Jackson National's motion for j.n.o.v., and this appeal followed.

Very few facts are *not* in dispute in this action, although both parties do agree to the following: On September 11, 1991, Janice Snead filled out an application for a $250,000 life insurance policy with Jackson National. She replied in the negative to two questions on the application, the first asking whether she "smoked cigarettes within the last 12 months," and the second asking whether she "smoked cigarettes in past twelve months." Jackson National issued a preferred non-smoker policy to Janice Snead on October 17, 1991. Janice Snead died on April 24, 1992. Because her death occurred during the two-year contestable period of the policy, Jackson National hired an investigator to question co-workers and friends to determine

---

[1] The action originally named as defendants two other life insurance companies who are no longer parties to the litigation.

whether Janice Snead made any misrepresentations on the policy application. Following the investigation, Jackson National denied Snead's claim for the policy proceeds on the ground that the policy was void under OCGA § 33-24-7 (b) because Janice Snead smoked cigarettes during the year preceding her insurance application.

At both trials, the evidence was hotly disputed as to whether Janice Snead had, in fact, smoked cigarettes during the 12-month period preceding her application, September 11, 1990 through September 10, 1991. On the one hand, Jackson National presented testimony from several of Janice Snead's co-workers that they saw Janice Snead smoke during a New Year's Eve party on December 31, 1990. They also testified that they observed Janice Snead smoke at work on a regular basis at least through January or February 1991. Snead's counsel vigorously attacked this testimony on cross-examination, questioning the witnesses' memory for dates, showing a prior inconsistent statement of one witness, exploring possible grounds of bias against Janice Snead and her husband,[2] and suggesting that Jackson National's investigator supplied one witness with certain dates she otherwise would not have remembered.

Snead also called witnesses to testify that Janice Snead did not smoke within the 12-month period at issue. Snead, Janice Snead's daughter, and several family friends all testified that Janice Snead quit smoking some time in March 1990, and since that time they had not seen her smoke cigarettes or smelled cigarettes on her person. Several former co-workers testified on Snead's behalf, stating that although they no longer worked with Janice Snead during the critical time period, they had not observed her smoke at work or during social occasions since January or February 1991. A dental hygienist also testified that Janice Snead's teeth did not reveal any stains, gum disease, or other sign of smoking in October 1989 or March 1992, although she acknowledged that intervening dental records from the same office indicated she had stained teeth and irritated gums in September and December 1991 when she was seen by another hygienist. Finally, Snead introduced testimony that Janice Snead had been administered a nicotine screen test at the time she applied for the insurance that tested negative.

Jackson National also introduced evidence contradicting Snead's claim that Janice Snead stopped smoking in March 1990. For example, a photograph of Janice Snead taken in June 1990 was produced that showed her holding a cigarette in her hand at an office party.[3]

---

[2] But Jackson National offered as a basis for two witnesses' animosity towards Snead their testimony that Snead had asked one to change her story and was perceived by another as "trying to intimidate" or "threatening" her.

[3] Snead responded to this testimony by emphasizing that the photograph taken in June

Janice Snead's physician was called to testify, and medical records were introduced that showed Janice Snead visited her physician in March 1991 for a respiratory infection and asked for Nicorette samples to help her stop her "one-half pack a day" smoking habit.[4]

Both parties also disputed the materiality of Janice Snead's alleged misrepresentation. Jackson National's underwriters testified that the insurance company had a firm, bright-line policy that would have not allowed them to issue the preferred non-smoker policy to Janice Snead even if she had smoked only one cigarette in the year period preceding the application. Instead, they would have offered her a smoker policy with a 42 percent higher premium because cigarette smoking of any kind changed the nature of the risk the company was willing to assume. In Jackson National's opinion, the representations made by Janice Snead on her insurance application about her smoking habits were material to the company's decision to issue her a preferred non-smoker policy.

Snead called an expert witness to contradict this testimony. In his opinion, most insurance companies, using a prudent insurer standard, would have issued Janice Snead a non-smoker policy even if she had smoked one or more cigarettes in the 12 months preceding her application because the questions on the insurance application were for the purpose of screening for regular and habitual smokers, not occasional smokers; in his opinion, if the facts revealed that Janice Snead had continued to smoke cigarettes on an occasional basis through January 1991, a prudent insurer would still have issued her a non-smoker policy because her smoking habits did not increase the risk assumed by an insurance company.

At the first trial of this case, the jury found for Jackson National, and at the second trial, where substantially the same evidence was presented, the jury found for Snead.

1. Jackson National first argues that the trial court's grant of Snead's motion for a new trial following the first trial was error because the evidence in favor of the verdict was overwhelming and demanded a verdict in favor of Jackson National. It is well established that the first grant of a new trial on the general grounds will not be disturbed by an appellate court unless the trial court abused its discretion in granting it and the law and facts *require* the verdict. OCGA § 5-5-50. See *Lister v. Scriver*, 216 Ga. App. 741, 747 (2) (456 SE2d 83).

In the present case, in order to void Janice Snead's policy of

---

1990 was not within the 12-month period preceding the insurance application.

[4] Snead explained this testimony by stating that he asked Janice Snead to tell her doctor she was smoking in order to obtain Nicorette samples for himself, because he had been refused any more Nicorette. The doctor denied refusing Snead Nicorette.

insurance for misrepresentation, Jackson National had the burden of proving that Janice Snead's representations in her insurance application concerning her smoking habits were false and that these misrepresentations were material in that they changed the nature, extent, or character of Jackson National's risk or in that Jackson National would not have in good faith issued the same policy to Janice Snead as applied for if the true facts had been known to them. See OCGA § 33-24-7; *Taylor v. Ga. Intl. Life Ins. Co.*, 207 Ga. App. 341, 342 (427 SE2d 833). Because the evidence in this case was so clearly in conflict as to whether Janice Snead had materially misrepresented her smoking habits, we do not find that a verdict for Jackson National was demanded by the evidence. Accordingly, the trial court did not abuse its discretion in its first grant of a new trial to Snead.

2. Jackson National next argues the trial court's order granting a new trial was a nullity because it failed to state the court's reasons for exercising its discretion as required by OCGA § 5-5-51.

Snead's motion for a new trial was made on the general grounds, OCGA §§ 5-5-20 and 5-5-21, and the trial court's written order expressly applies the principle that a new trial may be granted on the general grounds "to correct what it considers to be an unfair and unjust verdict" and "to accomplish justice." The trial court's order was therefore in compliance with the requirements of OCGA § 5-5-51. See *Central of Ga. R. Co. v. Hearn*, 188 Ga. App. 277, 280 (4) (372 SE2d 834) (same language sufficient to identify two bases for ruling). There was no error.

3. In its third and fourth enumerations, Jackson National argues that at both the first and second trial, the trial court erred in failing to direct a verdict at the close of the evidence, because the evidence was overwhelming that Janice Snead had misrepresented her smoking habits on the insurance application and that such misrepresentation was material under OCGA § 33-24-7 (b) (2) and (3).

A directed verdict may be granted only when there is no conflict as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. On appeal, we must decide whether all the evidence demanded the grant of a directed verdict, or whether there was some evidence supporting the verdict of the jury. OCGA § 9-11-50 (a).

(a) Jackson National first argues the trial court erred in failing to direct a verdict on the issue of the falsity of Janice Snead's representation that she had not smoked in the last 12 months. We disagree. As discussed in Division 1, above, the evidence on this issue was conflicting and disputed, and a directed verdict in favor of Jackson National was not demanded by the evidence. See generally *Nationwide Mut. Fire Ins. Co. v. Wiley*, 220 Ga. App. 442, 443 (2) (469

SE2d 302). Compare *Celtic Life Ins. Co. v. Monroe*, 220 Ga. App. 38, 39-40 (2) (467 SE2d 360), and *Jennings v. Life Ins. Co. of Ga.*, 212 Ga. App. 140 (441 SE2d 479) (evidence undisputed that insureds misrepresented medical conditions on insurance applications).

(b) Jackson National also argues that a directed verdict on the issue of materiality under OCGA § 33-24-7 (b) (2) and (3) was demanded by the evidence at trial. Again, we disagree.

"In order to void a policy of insurance for a misrepresentation in the application, the insurer must show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk. A material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance." (Citations and punctuation omitted.) *Sentry Indem. Co. v. Brady*, 153 Ga. App. 168, 170 (264 SE2d 702). "Ordinarily it is a jury question as to whether a misrepresentation is material, but where the evidence excludes every reasonable inference except that it was material, it is a question of law for the court." (Punctuation omitted.) *Miller v. Nationwide Ins. Co.*, 202 Ga. App. 737 (415 SE2d 700).

As discussed previously, the evidence on these issues was conflicting and disputed. Snead's expert witness contradicted the testimony of Jackson National's witnesses on the issue of materiality and Jackson National's good faith under OCGA § 33-24-7 (b) and created issues of fact that were properly submitted to the jury. See *United &c. Ins. Co. v. Shirley*, 242 Ga. 235, 236-237 (248 SE2d 635) (whether child received "non-routine" medical care disputed). Compare *Davis v. John Hancock &c. Ins. Co.*, 202 Ga. App. 3, 5-6 (413 SE2d 224) (where insurance company's evidence was uncontradicted as to materiality of risk).

4. At the second trial, the trial court gave a lengthy charge to the jury on the construction of ambiguous terms in insurance contracts. A portion of that charge stated, "If an insurance policy is ambiguous or uncertain, the ambiguity or uncertainty is to be resolved against the insurer. In this regard, words used in an insurance contract must be given their usual and ordinary meaning and must be considered in light of surrounding circumstances. Stipulations and conditions of an insurance policy are to have a reasonable meaning and are to be construed, if possible, to avoid forfeitures and provide coverage and to advance the beneficial purposes intended to be accomplished."

Jackson National contends that this instruction should not have been given because there is no ambiguity in the insurance application's language seeking information regarding Janice Snead's status as a "smoker." To this issue, Jackson National's insurance application provides, "Have you smoked cigarettes in the past 12 months?" and

"HAS THE PERSON PROPOSED FOR INSURANCE: Smoked cigarettes within the last 12 months?"

The trial court found these questions ambiguous and submitted the issue of the insurance application's alleged ambiguity to the jury in accordance with *Travelers Ins. Co. v. Blakey*, 255 Ga. 699 (342 SE2d 308). We agree with this determination because Jackson National's use of "yes" or "no" options in its application, combined with its use of the word "cigarettes," without emphasizing specifically or delving further into the insurance applicant's status as a smoker, may have prompted Janice Snead's negative responses based on her subjective belief that, while she possibly knew that she had slipped a cigarette or two during the year preceding her insurance policy application, Jackson National's two "yes" or "no" questions were directed to her status as a regular user of "cigarettes." This conclusion is supported by evidence from Snead's expert insurance underwriter who testified that such questions on insurance applications are for the purpose of screening for regular or habitual smokers, not occasional smokers. This view is consistent with the general rule that answers to questions in an insurance application that are ambiguous and call for "yes" or "no" answers cannot be false as a matter of law. See *Cockerham v. Pilot Life Ins. Co.*, 374 SE2d 174, 176 (1988).

"The same rule of construing an insurance policy or bond strongly against the insurer and favorably to the insured applies to an application, or matters contained therein, as to the policy itself, the instrument having been prepared by the insurer. The insurance company is also under a duty to frame questions in the application so that they will be free from misleading interpretations. When it has failed to do so, an ambiguity or doubt arises, questions and answers thereto will be construed most favorably to the insured." 13A Appleman, Ins. Law & Practice, § 7585, pp. 254-256.

5. Jackson National contends the trial court erred in allowing into evidence Snead's testimony describing how Janice Snead died because such evidence was immaterial to the issues presented under OCGA § 33-24-7 (b) and patently prejudicial to Jackson National. Although we agree that the cause of death was irrelevant, we do not believe it constitutes reversible error considering the small amount of detail related by the testimony concerning the cause of death, its place in the context of all the evidence and the issues of the case, and the trial court's charge on the subject of cause of death. In such cases, the jury could be instructed by the trial court or by stipulation that the cause of death was not related to smoking tobacco. This would eliminate any prejudicial speculation.

*Judgment affirmed. Beasley, Ruffin and Eldridge, JJ., concur. Andrews, C. J., Birdsong, P. J., and Smith, J., dissent.*

SMITH, Judge, dissenting.

I agree that the trial court's order granting a new trial was valid. I also agree that the trial court did not abuse its discretion in granting Snead a new trial after a defendant's verdict in the first trial of this case or in denying Jackson National a new trial after the verdict for Snead in the second trial. The evidence on the central issues of misrepresentation and materiality was conflicting and disputed, and a directed verdict in favor of Jackson National was not demanded by the evidence. The trial court therefore did not err in denying Jackson National's motion for a directed verdict on either ground. But I cannot agree that the trial court correctly charged the jury; the instruction on the legal principles of ambiguity in the second trial was harmful error.

At the second trial, the trial court gave a lengthy charge to the jury on the construction of ambiguous terms in insurance contracts.[5] The trial court charged the jury in the language of plaintiff's Request to Charge No. 14, that "contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. If an insurance policy is ambiguous or uncertain, the ambiguity or uncertainty is to be resolved against the insurer." Jackson National argues that this charge was inapplicable in a misrepresentation case and therefore was irrelevant and confusing. In my opinion, this conclusion is correct.

"When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless. . . . Harmful error results when an inapplicable instruction might reasonably draw the jury away from the true issues in dispute or if the erroneous instruction is inapplicable to a vital issue in the case." (Citations and punctuation omitted.) *Hopkins v. First Union Bank &c.*, 193 Ga. App. 109, 112 (387 SE2d 144) (1989).

I would find that the trial court's charge constituted reversible error because the two virtually identical questions in the insurance application seeking information about Janice Snead's smoking habits were unambiguous, the first asking whether she "smoked cigarettes within the last 12 months," and the second asking whether she "smoked cigarettes in past twelve months." Janice Snead was asked whether she had smoked cigarettes within the last 12 months, and that was the central issue before the jury for determination. The

---

[5] The charge on ambiguity was not given at the first trial. This charge also was given to the jury a second time during deliberations at the request of the jury.

application terms themselves were not at issue, only whether the facts showed that Janice Snead was smoking cigarettes in the year preceding her application. Because no genuine issue existed as to the meaning of the word "cigarettes" in this case, this word being neither obscurely written nor ambiguous, the court's charge to construe the contract in favor of the insured was clearly erroneous. This is particularly so since it appears the trial court believed that Janice Snead's subjective understanding of the meaning of terms in the insurance application was relevant.

Under the facts of this case, this error cannot be deemed harmless. "A charge which injects into the case and submits for the jury's consideration issues not made by the pleadings or the evidence tends to confuse the jury as to the true issue in the case, is probably harmful to appellant, and is error requiring the grant of a new trial." (Citation and punctuation omitted.) *McCoy v. Alvista Care Home*, 194 Ga. App. 599, 601 (391 SE2d 419) (1990). It is noteworthy that, on essentially the same evidence, the jury in the second trial was given this charge and reached the opposite verdict from the first jury, which did not receive an instruction on ambiguity. It is also noteworthy that the jurors in the second trial asked to hear this new portion of the charge a second time, indicating possible confusion on their part as well as emphasizing the importance of this language in their deliberations.

The trial court also erred in allowing into evidence Snead's testimony describing how Janice Snead died because such evidence was immaterial to the issues presented under OCGA § 33-24-7 (b) and patently prejudicial to Jackson National. " 'Any evidence is relevant which logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. (Cit.) Moreover, where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury. (Cits.)' [Cits.]" *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 338 (3) (c) (319 SE2d 470) (1984). But it is also true that " '[a]dmission of evidence which is both irrelevant and prejudicial is harmful error. (Cits.)' . . . [Cit.]" (Emphasis omitted.) *Thomason v. Harper*, 162 Ga. App. 441, 442 (289 SE2d 773) (1982).

In order to recover against Jackson National, Snead had the burden of showing: (1) a life insurance policy was issued by Jackson National on the life of Janice Snead; (2) a premium was paid; (3) Janice Snead died; (4) a claim was made for the policy proceeds; and (5) Jackson National refused to pay. The parties stipulated that Janice Snead died on April 24, 1992. It is immaterial that an insured "died from an unrelated cause concerning which there was no misrepresentation." *Hopkins v. Life Ins. Co. of Ga.*, 218 Ga. App. 591, 593 (462 SE2d 467) (1995). The trial court charged the jury that the

cause of the insured's death was not relevant to the issue of materiality under OCGA § 33-24-7 (b). Under these circumstances, the manner of Janice Snead's death was irrelevant to show any disputed issue at trial.

The trial court was aware of the potential for prejudice and took some action to limit testimony regarding the manner of Janice Snead's accidental death. Snead nevertheless testified in considerable detail to the circumstances of the accident, his discovery of Janice Snead in an injured state and his attempts to free her from her trapped position.

This testimony was wholly irrelevant to any disputed issue in the case, and its potential for prejudice or sympathy is suggested by the notation in the transcript that a recess was taken because a juror began to cry during this testimony. Snead's expressed concern that the jury would otherwise have speculated regarding the cause of Janice Snead's death could have been addressed by an instruction or stipulation that her death was an accidental drowning and unrelated to any issue on trial, or by testimony to that effect.

For these reasons, I respectfully dissent.

I am authorized to state that Chief Judge Andrews and Presiding Judge Birdsong join in this dissent.

DECIDED MARCH 20, 1998

*Nations, Yates & Toman, J. Comer Yates, Gary J. Toman,* for appellant.

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, John R. Bevis,* for appellee.