**COLONY INSURANCE COMPANY,**
**Plaintiff,**

v.

**9400 ABERCORN, LLC, Defendant.**

**Case No. CV411–255.**

United States District Court,
S.D. Georgia,
Savannah Division.

May 10, 2012.

James V. Chin, Robert W. Fisher, Tate M. Keenan, Robins, Kaplan, Miller & Ciresi, LLP, Atlanta, GA, Allan C. Galis, Robert Bates Lovett, Hunter MacLean, PC, Savannah, GA, Marla R. Butler, Robins, Kaplan, Miller & Ciresi, LLP, New York, NY, for Plaintiff.

Timothy D. Roberts, Jacob D. Massee, Patrick T. O'Connor, Oliver Maner, LLP, Savannah, GA, Michael J. Higer, Higer Lichter & Givner, LLP, Aventura, FL, for Defendant.

### ORDER

G.R. SMITH, United States Magistrate Judge.

Before the undersigned in this insurance coverage dispute is plaintiff Colony Insurance Company's (Colony's) motion to compel defendant 944 Abercorn, LCC's (Abercorn's) discovery responses. Doc. 34. Colony also moves to amend its complaint.

Doc. 35. The resolution of the legal issues driving those motions may conflict with that of the district judge when he resolves Abercorn's pending summary judgment motion, doc. 29. Thus, the Court must defer the motions to the district judge.

## I. BACKGROUND

The dispute arises from water damage to a Savannah, Georgia apartment complex known as the "English Oaks Apartments." Abercorn owned it during the 2008–2009 term of a damage policy issued by Colony. Abercorn thus filed a damage claim with Colony. The parties conducted an appraisal under the policy's terms and Colony partially paid, doc. 29 at 3, doc. 42 at 3, 8, but then stopped and filed this Declaratory Judgment action to limit coverage. Doc. 1. Even though Abercorn lost the complex to foreclosure in July 2010,[1] it insists that it still has standing to pursue the policy's proceeds (it claims it purchased that right from the lender) and thus has moved for partial summary judgment on that score. Doc. 29. That motion is before the district judge.

The gist of Colony's "compel" motion turns on the water damages. It wants details on Abercorn's claim, but Abercorn says Colony has all it needs—indeed, the appraisal process resolved coverage, it contends. In fact, Abercorn moved to stay discovery pending its summary-judgment motion. Doc. 30 (motion); doc. 59 (Order denying it). Abercorn had recounted its discovery disclosures and insisted that "Colony has turned to needlessly expanding the scope of discovery in order to further delay the payment pursuant to the Appraisal Award, and to increase unnecessarily the cost of this litigation to [Aber-

---

1. Abercorn asserted ownership "at all relevant times" in its Answer and Counterclaim. Doc. 8 at 14. Colony says that on a meet and confer call trying to resolve a discovery dispute on February 22, 2012, Abercorn's attorney revealed for the first time that Abercorn lost English Oaks in foreclosure in July 2010. Doc. 70 at 4. Yet, Abercorn never disclosed this fact to the Court. Doc. 42 at 9.

corn]." Doc. 30 at 4. Abercorn repeats that theme in its response to Colony's compel motion. Doc. 48 at 3 (insisting it has provided all of the requested information through the Appraisal process).

Colony's motion to amend its complaint centers on the misrepresentation and standing defenses that it wants to raise: "What began as a straight-forward action to set aside an unlawful appraisal," Colony contends, "has become an active investigation of insurance fraud." Doc. 70 at 1. Accusing Abercorn of "wordplay and gamesmanship," *id.* at 6, Colony recounts Abercorn's failure to disclose its foreclosure and questions Abercorn's claim that it purchased the right to collect the insurance policy proceeds. In fact, Colony sought documentation on that latter point but accuses Abercorn of giving it a false affidavit—*during* this litigation.[2] *Id.* at 12.

## II. GOVERNING STANDARDS

### A. Insurable Interest

■ Both the compel and amend motions will be substantially affected (if not mooted outright) if Abercorn lost the insurable interest covered by the policy's proceeds, and thus lacks standing here. *See Muhammad v. Allstate Ins. Co.*, 313 Ga.App. 531, 534, 722 S.E.2d 136 (2012)

(insured's wholly owned corporation lacked standing to make a claim under homeowner's policy; insured lost any insurable interest in property following foreclosure). An "insurable interest" is defined in OCGA § 33-24-4(a) to mean "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." And under subsection (b) of that Code section, "[n]o insurance contract on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having, at the time of the loss, an insurable interest in the things insured." And mere possession of property, while it might give the possessor certain rights against a trespasser, is not in and of itself sufficient to create an insurable interest.

313 Ga.App. at 534, 722 S.E.2d 136. The parties have cited a number of cases that analyze pre- and post-foreclosure insurable interests. Doc. 63 at 6–8; doc. 70 at 10–11. That area of law is laced with subtle nuances. *See, e.g., Ocwen Loan Servicing, LLC v. Nationwide Mut. Fire Ins. Co.*, 2012 WL 1067854 at *5–7 (S.D.Ind. Mar. 29, 2012).

---

**2.** While Abercorn indicates that it will respond to this accusation, doc. 74, note that this Court does *not* tolerate such behavior. *See, e.g., Knox v. Hayes*, 933 F.Supp. 1573, 1578–86 (S.D.Ga.1995) (defense counsel exhibited bad faith in wrongful death action by incorporating both false and misleading statements in affidavit, allowing affiant to sign it when both affiant and counsel knew it was false, allowing statement to be notarized, presenting it as a sworn statement in responses to interrogatories (with no indication that it was "draft," or that it had in fact not been sworn to), allowing opposing counsel and experts to rely upon it without informing them of its true nature, and, instead of simply admitting indiscretion to court, forcing it and opposing counsel to wade through countless filings and shifting excuses; thus, plaintiffs would be awarded fees and costs of pursuing matter payable by defense counsel, and defense counsel and his firm would be disqualified from representing defendants). Litigants who perjure themselves before this Court are prosecuted. *See, e.g., United States v. Dickerson*, CR608–36, doc. 1 (S.D.Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), *cited in Irick v. United States*, 2009 WL 2992562 at *2 (S.D.Ga. Sept. 17, 2009), and *Hayes v. United States*, 2011 WL 3468799 at *5 n. 6 (S.D.Ga. Aug. 9.2011).

## B. Misrepresentation Defense

■ The compel and amend motions also pivot on an insurer's right to deny coverage based on the insured's misrepresentations:

Misrepresentations, incorrect statements, or omissions of fact on an insurance application do not prevent recovery under the policy unless (a) fraudulent, or (b) material either to acceptance of the risk or the hazard assumed, or unless (c) the insurer in good faith would not have issued the policy in the amount and at the rate charged if the truth had been known to the insurer. OCGA § 33–24–7(b); *Taylor v. Ga. Intl. Life Ins. Co.*, 207 Ga.App. 341, 342, 427 S.E.2d 833 (1993). To void the policy, the burden rests on the insurer to show that the misrepresentation was material to its acceptance of the terms of the policy. *Jackson Nat. Life Ins. Co. v. Snead*, 231 Ga.App. 406, 410(3)(b), 499 S.E.2d 173 (1998). "A material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance." (Citation and punctuation omitted.) *Id.; Ga. Intl. Life Ins. Co. v. Bear's Den*, 162 Ga.App. 833, 838(3), 292 S.E.2d 502 (1982). *Thompson v. Permanent General Assur. Corp.*, 238 Ga.App. 450, 451, 519 S.E.2d 249 (1999). "However, the insurer need not actually rely on the misrepresentation or suffer any prejudice therefrom." *Scott v. Allstate Property & Cas. Ins. Co.*, 2010 WL 1254295 at *3 (S.D.Ga. Mar. 30, 2010) (quotes and cite omitted), *reconsideration denied*, 2010 WL 1526050 (S.D.Ga. Apr. 15, 2010).

■ A sub-issue arises—the degree of due diligence an insurer must exercise in evaluating an application for insurance. Here "[a]n insurer is entitled to *rely* on the statements of an applicant as true, without conducting an independent investigation." 16 GA. JUR. INSURANCE § 9:1 (Mar. 2012) (emphasis added) (citing *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 431–32, 469 S.E.2d 199 (1995)). Thus, no "buyer beware" or *caveat emptor* doctrine applies here.[3]

## III. ANALYSIS

■ Colony wants to amend its complaint so it can litigate Abercorn's stand-

---

**3.** It would drive up insurance costs if insurers had to investigate every last fact behind an insurance application that, by definition, is supplying risk and other premium-determinative data. It lowers insurance costs for everyone if an insurer can rely on the truth when asking risk-assessing, premium-determinative questions. Applicants are motivated to supply the *whole* truth because they know that insurers can deny coverage if they do not. An insured thus cannot lie—even by omission—to an insurer by insisting that, had the insurer been more diligent (e.g., consult public foreclosure records) it would have learned of a material fact. That would only manipulate lower premiums at the expense of honest insureds. *See generally* 45 C.J.S. INSURANCE § 891 (Mar.2012).

To defeat the misrepresentation defense the insured may show that the alleged misrepresentation was based on knowledge and belief regarding information that he does *not* control (in which case, the burden shifts to the insurer to inquire and examine for itself "so as to ascertain the truth." *PHL Variable Ins. Co. v. Jolly*, 800 F.Supp.2d 1205, 1213 (N.D.Ga.2011) (quotes and cite omitted), *aff'd*, 460 Fed.Appx. 899 (11th Cir.2012)). Another way is to show that "the insurer's reliance on information in the application ... is so utterly unreasonable that there could be no justifiable reliance." 44 AM.JUR.2D INSURANCE § 1026 (Feb.2012). "If evidence is presented that the insurer had, or was chargeable with, knowledge of facts which revealed the falsity of the representations prior to the insurer's reliance, the insurer must then establish by a preponderance of the evidence that it had no such knowledge or at least that its failure to discover the true facts was attributable to mere negligence." *Id.* Otherwise, "[m]isrepresentations, in order to avoid the contract of insurance, need not be the sole inducement to

ing—whether Abercorn has an insurable interest in light of the July 2010 foreclosure. Colony says Abercorn lacks an insurable interest. Doc. 35 at 3. Abercorn insists it does have an insurable interest and cites the fact that its lender was *not* a loss-payee on the policy. Doc. 63 at 6–10. It also cites precedent holding that one's insurable interest is fixed at the time of loss. *Id.* And finally, argues Abercorn, even if its lender acquired the insurable interest (the right to the disputed policy proceeds), Abercorn reacquired it. *Id.* at 8–10.

Abercorn further argues that Colony's motion to amend is untimely (well past this Court's January 3, 2012 Scheduling Order deadline for filing motions to amend, docs. 15 & 62) because, even though Abercorn never volunteered its "foreclosed" status to Colony, Colony could have easily found that out by checking the public records or even asking Abercorn, but it did not. *Id.* at 1–8.

Colony challenges many of the factual assertions Abercorn makes to support its arguments. In fact, it wants to add breach of contract and common law fraud theories to its complaint, then set aside the appraisal award.[4] It contends that Abercorn "concealed the fact that it had lost all interest" in the property due to the foreclosure. Doc. 35 at 1.[5] Also, Abercorn purchased the property in April 2007, but it misrepresented to Colony in its March 2008 application for insurance that it was a "new purchase."[6] Finally, Colony contends, Abercorn misrepresented that it had no prior incidents of water or mold damage, when in fact documents recently obtained from a third party show that Abercorn had been experiencing water damage and mold-related issues *before* it even applied for insurance with Colony. Doc. 35 at 2. And, of course, there is the false-affidavit accusation noted *supra.*

These core issues (standing and misrepresentation) drive not only the amend and compel motions[7] before the undersigned,

---

the contract nor the chief influence leading to action; it is enough if, as a contributory influence, they operate upon the mind and conduct of the other party to any material extent." *Id.*

4. "The 'Appraisal of Insurance Claim—Award Form' provides for replacement cost value loss of $4,249,070.20, an actual cash-value loss of $4,084,326.90, and mold damage of $15,000." Doc. 29 at 6.

5. Colony correctly points out that Abercorn failed to disclose the post-foreclosure owner in its Certificate of Interested Parties in this case. Doc. 35 at 3; doc. 12.

6. Colony further explains:

Abercorn purchased English Oaks in April 20, 2007. Upon information and belief, based on documents obtained in discovery, Abercorn experienced incidents of water and mold damage in 2007 and early 2008. Abercorn *misrepresented* to Colony during its application for insurance in March 2008 that English Oaks was a "new purchase"

and had no prior incidents of water and mold damage. Colony would not have issued the Policy or would not have issued the Policy, as written, to Abercorn if it had known that English Oaks was not a "new purchase" and Abercorn had owned it for nearly a year or that there had been prior incidents of water and mold damage. Pursuant to O.C.G.A. § 33–24–7, a policy is void if the policyholder makes a fraudulent or material misrepresentation in its application for insurance. Pursuant to O.C.G.A. § 13–4–60, the defrauded party may rescind a contract upon discovery of the fraud.

Doc. 35 at 7–8 (emphasis added).

7. The compel motion turns on whether the parties are limited to the appraisal award or may explore facts beyond it. They also argue over the degree of specificity a "requestee" must furnish in response to the requestor's questions. Colony says that: (1) Abercorn's alleged loss of 87 apartment units to the water leak did *not* occur during the April 19,

but also the summary judgment motion before the district judge. Colony opposes Abercorn's summary judgment, for example, by citing Abercorn's foreclosure (hence, it challenges Abercorn's standing) as well as the alleged policy breach "by [Abercorn] concealing its interest in the property." Doc. 42 at 1. Another issue is "whether the property loss occurred during the terms of the policy." *Id.* at 1–2. That, in turn, is tied into Colony's misrepresentation and fraudulent affidavit charges. Abercorn, meanwhile, does not dispute that whether it has the insurable interest, and thus has standing in this case, is a make-or-break summary judgment issue. Doc. 64 at 4–6.

Hence, an interpretation of the law embedded within those arguments here could conflict with the district judge's interpretation of the law in resolving the summary judgment motion. And given the subtle nuances resonating within those legal areas, *see supra* Part II(B), the chance of a conflict is reasonably high. This supplies good cause to reconsider and vacate the Court's prior ruling on Abercorn's stay motion, doc. 30, though Abercorn based that motion on different grounds than those illuminated here. *Id.* at 9–11 (it basically argues that the parties' appraisal

process obviates the discovery Colony seeks and thus Abercorn is entitled to summary judgment based on the appraisal results). The district judge must decide, in reaching the pending summary-judgment motion, the insurable-interest if not other core issues detailed above.[8] If Abercorn has no interest and thus no standing, then this case will be substantially altered (e.g., an addition, if not realignment of, parties under Fed.R.Civ.P. 17 and 21).

Finally, serious fraud allegations have been raised, and it is for the district judge to draw the precise materiality/reliance/diligence line in addressing them.[9] That, in turn, determines what is relevant discovery-wise. If Abercorn is right (that all of the fraud-based discovery that Colony seeks is irrelevant in light of the appraisals and Colony's failure to exercise due diligence), then Colony's compel and amend motions should be denied. If not, then that supplies grounds for granting them. To resolve these core issues is in no small to part resolve the summary-judgment issues.

## IV. CONCLUSION

Because Colony's compel and amend motions are inextricably intertwined with Abercorn's summary-judgment motion,

---

2008—April 21, 2009 policy term; and (2) Abercorn failed to "notify Colony of the alleged loss to th[o]se 87 units." Doc. 60 at 2. Colony thus seeks discovery on those contentions. Doc. 60 at 2.

But Abercorn, Colony complains, has simply lobbed reams of documents at it and basically told it to "Go Fish." That does not honor the discovery standard, says Colony, and Abercorn has failed to specify on what pages the answers may be found. Colony has repeatedly told Abercorn that it can find none. *Id.* at 3. Abercorn responds that it has adequately responded, and it has set forth verbatim its initial and supplemental discovery responses to show that it has met Fed.R.Civ.P. 33(b)(3)'s disclosure standard. Doc. 48. All of this is moot if Abercorn lacks standing.

8. There are other legal issues to be resolved, too. The parties disagree, for example, about whether Florida or Georgia law applies, as well as the proper interpretation of "insurable interest" precedent. Doc. 42 at 9–10; doc. 64 at 2–3. And just how far the misrepresentation defense applies here drives what is relevant in Colony's quest for information showing that Abercorn has made misrepresentations to it.

9. The *Scott* ruling—that for concealment or fraud to void coverage "the insurer need not actually rely on the misrepresentation or suffer any prejudice therefrom," *Scott,* 2010 WL 1254295 at *3—was made by the same district judge who will rule on Abercorn's summary-judgment motion. The same may be said for the *Knox* ruling. *See supra* n. 2.

they must be deferred to the district judge. Before him each party will be free to invoke Fed.R.Civ.P. 56(d) to show what, if any, additional discovery is needed. The Court thus **VACATES** its "Stay" ruling, doc. 59, and now **STAYS** discovery pending the district judge's resolution of the summary-judgment motion (doc. 29). The Court also **DEFERS** to the district judge Colony's motions to compel and for leave to file an amended complaint. Docs. 34 & 35. For the same reasons, the Court also **DEFERS** the motion of SMF Apts., LLC for a protective order. Doc. 75.[10]

10. Colony wants to re-inspect the apartments but SMF contends, *inter alia*, that it is being short-timed and unduly burdened. The time for Colony to respond has not yet elapsed. The motion may be moot if Abercorn lacks standing.