A07A0686. WHITE et al. v. AMERICAN FAMILY LIFE ASSURANCE COMPANY.

(643 SE2d 298)

BLACKBURN, Presiding Judge.

Following a jury trial in this breach-of-contract action to recover health insurance proceeds, plaintiffs Gary and Sheila White appeal the defense verdict and resulting judgment, arguing that the court erroneously charged the jury that they could find in favor of the defendant American Family Life Assurance Company (AFLAC) if they determined that the Whites made material misstatements in their insurance application, even if such misstatements were made

---

innocently. Holding that the jury instructions were accurate and applicable statements of the law, we affirm.

The record reveals that in February 2001, Gary and Sheila White completed an AFLAC insurance application to insure their health against certain specified health events such as irreversible kidney failure or organ transplant. In response to the question on the application "Has anyone to be covered ever been diagnosed with or received treatment for [impaired kidney function or other listed maladies] by a member of the medical profession," the Whites marked "No." Had they responded "Yes" to this question on the application, the application provided that the policy would not cover the person who had been so diagnosed or treated.

The Whites further answered "No" to the question as to whether either of them had been diagnosed with, received treatment for, or been prescribed medication for kidney disease within the last five years. If they had answered "Yes" to this question, they would have been required to give more specific information. Sheila signed the application, agreeing that she had read the completed application, that she realized policy issuance was based upon statements and answers provided therein, and that the statements and answers were "complete and true to the best of my knowledge and belief." Relying on these statements, AFLAC issued a policy effective February 13, 2001, which attached and incorporated the completed application form.

Seven months later, Gary suffered a complete irreversible failure of his kidneys and eventually underwent a kidney transplant. Although these were specified events under the policy, AFLAC refused to cover same, contending that the Whites had made material misstatements in the application. AFLAC pointed out that Gary's medical records revealed that in 1996 he had been diagnosed with impaired kidney function (resulting from his diabetes), and that only three months prior to the completion of the insurance application, his doctor had confirmed to him orally and in writing that he was taking medication to prevent further loss of kidney function. AFLAC rescinded the policy and tendered back the Whites' premium payments.

The Whites sued AFLAC for breach of contract. At trial, the Whites presented evidence that although Gary had been diagnosed and treated with medication for impaired kidney function and kidney disease from 1996 through 2001, he and Sheila believed the treatment was only related to his diabetes and were unaware of any kidney problems at the time they completed the insurance application. At trial, the court instructed the jury (over the Whites' objection):

I further charge you that all statements and descriptions in any application for an insurance policy or any negotiations

for them by or on behalf of the insured shall be deemed to be representations. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy of contract unless they're either fraudulent or material, either to the acceptance of the risk or to the hazard assumed by the insurer; or the insurer, in good faith, would either not have issued the policy or contract or would not have issued a policy or a contract in as large an amount or at a premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise. I further charge you that if there was a misrepresentation in the application for insurance and it was attached to the policy and made a part of it and was material in that it changed the nature, extent and character of the risk, it would void the policy, even though it were made innocently and in good faith.

The jury rendered a defense verdict, and the Whites appeal on the ground that the jury instruction was erroneous.

Because the review of an allegedly erroneous jury instruction is a legal question, we owe no deference to the trial court's ruling and apply the "plain legal error" standard of review. *Stephens v. Hypes.*[1] The applicable statute on this matter provides:

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

---

[1] *Stephens v. Hypes*, 271 Ga. App. 863, 865 (610 SE2d 631) (2005).

OCGA § 33-24-7 (b).

Based on the language of subsection (2), "[i]n order to prevail, the insurer need only show that the representation was false and that it was material." *Lee v. Chrysler Life Ins. Co.*[2] Because only subsection (1) refers to fraud, the Supreme Court of Georgia has specifically eschewed any need for the insurer to show that the plaintiff was aware of the falsity of the representation or statement in order to void a policy under subsections (2) or (3). *United Family Life Ins. Co. v. Shirley.*[3] Thus, "it is immaterial whether the applicant acted in good faith in completing the application." *Taylor v. Ga. Intl. Life Ins. Co.*[4] Accord *Worley v. State Farm &c. Ins. Co.*;[5] *Davis v. John Hancock Mut. Life Ins. Co.*;[6] *Haugseth v. Cotton States Mut. Ins. Co.*[7] Rather, "[t]o preclude the applicant from recovering under the policy, the insurer need only show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk." (Punctuation omitted.) *Taylor*, supra, 207 Ga. App. at 342. Based on these authorities, the jury instruction given by the trial court was correct.

Nevertheless, the Whites forward two reasons why their circumstances merit an exception to this rule and render the jury instruction erroneous. First, they argue the language above Sheila's signature that the statements were "complete and true *to the best of my knowledge and belief*" (emphasis supplied) injected the element of good faith into the case. In other words, the Whites maintain that AFLAC's decision to require that the applicant only certify the accuracy of the statements in the application "to the best of my knowledge and belief" meant that AFLAC had liberalized or expanded its contract beyond the requirements of the law so as to make it void only if the applicant answered the questions knowing or believing that the answers were false.

The Whites misinterpret the meaning of the declaration "to the best of my knowledge and belief" in the context of an insurance application. *Jennings v. Life Ins. Co. of Ga.*[8] explained that "[s]uch a declaration is formulated to prevent an applicant from asserting that he relied upon someone else, and to ensure that the declaration of truth is not the act of one whose insertion of material misrepresentations would be binding upon the company." (Punctuation omitted.)

---

[2] *Lee v. Chrysler Life Ins. Co.*, 204 Ga. App. 550, 551 (419 SE2d 727) (1992).

[3] *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 238 (248 SE2d 635) (1978).

[4] *Taylor v. Ga. Intl. Life Ins. Co.*, 207 Ga. App. 341, 342 (427 SE2d 833) (1993).

[5] *Worley v. State Farm &c. Ins. Co.*, 208 Ga. App. 805, 807 (432 SE2d 244) (1993).

[6] *Davis v. John Hancock Mut. Life Ins. Co.*, 202 Ga. App. 3, 5 (413 SE2d 224) (1991).

[7] *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853, 854 (386 SE2d 725) (1989).

[8] *Jennings v. Life Ins. Co. of Ga.*, 212 Ga. App. 140, 141 (1) (441 SE2d 479) (1994).

In other words, this declaration is for the benefit of the insurance company to ensure that the applicant is relying upon his personal knowledge and belief, and not upon the knowledge and belief of others such as an agent. Although this declaration may act as a shield protecting the applicant if accused of intentional fraud, it is not a sword that the applicant can use to skewer the statute that voids insurance policies that are issued based on an applicant's inaccurate statements regarding material issues, regardless of the good faith of the applicant. See id. at 141-142 (1). Cf. OCGA § 33-24-7 (b) (2). Thus, in voiding insurance policies that were based on an applicant's inaccurate material statements, we have consistently held the good faith of the applicant to be irrelevant, even where the application contained the declaration that the statements therein were complete and true to the best of the applicant's knowledge and belief. See *Brown v. JMIC Life Ins. Co.;*[9] *Burkholder v. Ford Life Ins. Co.;*[10] *Oakes v. Blue Cross &c.;*[11] *Washington v. Interstate Fire Ins. Co.*[12] See also *Mercer v. The Mutual Life Ins. Co. of N.Y.*[13]

The second basis on which the Whites seek to carve out an exception for their case is their argument that the insurance contract was unique in that it intended to cover *all* pre-existing conditions that resulted in specified health events so long as the health event occurred 30 days after issuance of the policy. The relevant paragraph of the policy provided:

> A "Pre-existing Condition" is a Sickness or Injury for which, within the six-month period before the Effective Date of coverage, medical advice, consultation or treatment was recommended or received from a Physician. Benefits for a Specified Health Event that is caused by a Pre-existing Condition will not be covered if the Specified Health Event occurs during the first 30 days after the Effective Date. Any reoccurrence of a Specified Health Event occurring more than 30 days after the Effective date will be covered.

The Whites claim that this contract language meant that "unknown conditions would be covered so long as the event giving rise to the insurance claim, in this case the kidney failure, did not occur within 30 days of the issuance of the policy." Since their evidence showed that

---

[9] *Brown v. JMIC Life Ins. Co.*, 222 Ga. App. 670, 671-672 (1) (474 SE2d 645) (1996) (physical precedent only).

[10] *Burkholder v. Ford Life Ins. Co.*, 207 Ga. App. 908 (1) (429 SE2d 344) (1993).

[11] *Oakes v. Blue Cross &c.*, 170 Ga. App. 335, 336-337 (1) (317 SE2d 315) (1984).

[12] *Washington v. Interstate Fire Ins. Co.*, 163 Ga. App. 15, 16 (293 SE2d 485) (1982).

[13] *Mercer v. The Mutual Life Ins. Co. of N.Y.*, 283 FSupp. 873, 875 (M.D. Ga. 1967).

the kidney condition was unknown to them at the time they completed the insurance application, they argue this clause covered their situation and made the jury instruction improper.

This argument, however, ignores the bold-typed language on the application that a "Yes" answer to the question of whether Gary had ever been diagnosed with or received treatment for impaired kidney function would automatically exclude Gary from coverage under the policy. In other words, a policy covering him would simply not have issued in the first place.

The Whites counter that such language in the application contradicts the above-quoted "Pre-existing Condition" paragraph and thus creates an ambiguity in the contract. This argument is misplaced. Any pre-existing condition that related to the diagnosed or treated medical maladies listed in the application questions (such as impaired kidney function) would not be covered in any case, since by the express terms of the application, coverage would not issue in the first place for persons suffering from such maladies. However, if such pre-existing maladies had not been diagnosed or treated prior to the completion of the application, then coverage applied to specified health events resulting from such maladies. Also, if such pre-existing maladies had been diagnosed and were ones for which a physician had recommended or given advice, consultation or treatment in the six months before the application (but were not among those listed in the application questions; for example, pneumonia), then such pre-existing maladies that resulted in a specified health event would not preclude coverage for events occurring 30 days after the issuance of the policy.

In other words, even though the policy generally covered pre-existing conditions that resulted in specified health events occurring 30 days after issuance of the policy, the specific pre-existing conditions listed in the application questions were a discrete subset that was expressly excluded from any coverage, since under no circumstances would a policy issue to cover a person suffering from such. We enforce such absolute exclusions regarding a subset of specified conditions even though another broader provision of the policy could be read to cover such conditions generally. Cf. *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*[14] We discern no ambiguity nor any other reason to hold that the referenced jury instruction was erroneous or inapplicable.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

---

[14] *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 275 Ga. App. 55, 58-60 (619 SE2d 704) (2005).

DECIDED MARCH 7, 2007.

*Garcia & Bradley, Nicholas P. Garcia*, for appellants.
*Waldrep, Mullin & Callahan, Joseph L. Waldrep*, for appellee.