[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13902
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-03553-CV-TCB-1

BYUNG HO CHEOUN,
HAE SOOK CHUNG,
SHIRAZ KURANI,
on behalf of themselves and others similarly
situated,

Plaintiffs-Appellants,

versus

INFINITE ENERGY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 27, 2010)

Before EDMONDSON, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Byung Ho Cheoun, Shiraz Kurani, and Hae Sook Chung appeal the dismissal of their amended complaint against Infinite Energy, Inc. Cheoun, Kurani, and Chung, owners and operators of dry cleaning businesses in Georgia, alleged that Infinite, a Florida corporation, violated Georgia law by misleading and overcharging them and other putative class members for natural gas. We affirm.

## I. BACKGROUND

On December 3, 2008, Cheoun, Kurani, and Chung filed a class action complaint alleging that they were "member[s] of the Post-Katrina Lock-In Class," which was composed of dry cleaners exploited by Infinite and forced to pay an artificially high price for natural gas. The complaint alleged six acts of wrongdoing by Infinite: (1) that Infinite violated a rule of the Georgia Public Service Commission, Ga. Comp. R. & Regs. 515-7-10.06; (2) Infinite violated the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-393(a); (3) Infinite breached a legal duty, id. § 51-1-8; (4) Infinite violated the Georgia Uniform Deceptive Trade Practices Act, id. § 10-1-372; (5) Infinite made a negligent representation about the future price of natural gas; and (6) Infinite was unjustly enriched. The complaint sought injunctive relief, compensatory and punitive damages, and reimbursement for attorney's fees.

2

The complaint alleged that Infinite sold natural gas to dry cleaners in Georgia and developed a relationship with the Korean Cleaners Association of Atlanta, which is "an informal trade association" for dry cleaners that "regularly conduct[s] business on behalf of all participating dry cleaners who authorize it to do so in writing." The Association is "composed of paying members ('Members') and non-paying members ('Non-Members')." "[B]eginning in or around 2001," Infinite executed "a series of renewable, one-year master contracts" that set "terms for natural gas sales" for "participants" of the Association.

The complaint alleged that Infinite sought to "bind dry cleaners to the master contracts" and held "town hall meetings for the [Association's] constituents to sign 'authorizations' allowing the [Association] to negotiate prices on their behalf." Between 2004 and 2005, "Infinite managed to get some, but not all of the [Association's] constituency to sign these 'authorizations . . . .'" In July 2005, Infinite and the Association "negotiated and signed" their "last Master Contract" that contained "two variable-price plans, one for Members and one for Non-Members."

The complaint also alleged that, after Hurricane Katrina struck the Gulf Coast and prices "spike[d]" for natural gas, Infinite "embarked on a scheme to lock its customers into three- and five-year deals at exorbitant prices." In October 2005,

3

Infinite "sen[t] mailings to all of its customers (including its dry-cleaning customers) . . . representing . . . that the supply of natural gas was running out, and that prices would continue to spiral upward out of sight," even though "Infinite knew . . . that natural gas prices would be expected to return to lower levels in the very near future." Infinite offered the Association "an amendment to the then-current Master Contract" to obtain "lower per-therm prices" in exchange "for longer contract terms." The Association executed a "three-year Amendment, which set prices of $1.14 per therm for Members and $1.149 per therm for Non-Members."

The complaint alleged that, in October 2005, Infinite "switched over every [Association] dry cleaner," "those [Association] constituents who had never signed an authorization for the [Association] to act on their behalf," and "dry cleaning customers completely unaffiliated with the [Association], and who had no knowledge of the Master Contract or the Amendment" to the price set in the Amendment. "[E]ventually, the [Association] and its members began complaining about the high prices" and when they "attempted to change to another natural gas marketer, Infinite threatened to level . . . penalties" and "cut off [supplies of] natural gas." In November 2006, Infinite met with leaders of the Association, who "asked that its constituents—whether or not they had signed an authorization—be

released from the Amendment," but "Infinite refused."

The complaint alleged that the Association "contacted the Georgia Public Service Commission for assistance" and the Commission "investigated the matter." "[I]n the fall of 2007," the Association "again petitioned" the Commission and it "put together a packet for" all dry cleaners "to use to leave Infinite." Infinite maintained it "had the right to hold" the dry cleaners "to the terms of the Amendment."

Infinite moved to dismiss the complaint for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). The district court dismissed the complaint. The court ruled: (1) Infinite was not civilly liable for an alleged violation of administrative rule 515-7-10.06; (2) the complaint that Infinite violated the Fair Business Practices Act was untimely and failed to state a claim because the dry cleaners "failed to allege that they exercised any due diligence to ascertain" whether Infinite's representations about the supply and future price of gas were true or whether they reasonably relied on the misrepresentations; (3) the dry cleaners did not have a cause of action under section 51-1-8; (4) past misrepresentations by Infinite did not entitle the dry cleaners to injunctive relief under the Deceptive Trade Practices Act; (5) the dry cleaners could not recover for a misrepresentation about the future price of natural gas; and (6) Infinite was not unjustly enriched because it had a contract

5

with the dry cleaners that governed the cost of natural gas and Infinite did not accept "any action" by the dry cleaners "for which they expected repayment." The district court also ruled that, because the complaint failed, the dry cleaners were not entitled to punitive damages or attorney's fees.

## II. STANDARD OF REVIEW

We review <u>de novo</u> the dismissal of a complaint for failure to state a claim. <u>Glover v. Liggett Group, Inc.</u>, 459 F.3d 1304, 1308 (11th Cir. 2006). We accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. <u>Id.</u>

## III. DISCUSSION

The dry cleaners argue that the complaint survives a motion to dismiss. Under Georgia law, which the parties agree applies, this argument fails. We address each count of the complaint in turn.

### A. Infinite Could Not Be Held Civilly Liable for Violating a Rule of the Georgia Public Service Commission.

The dry cleaners argue that a rule promulgated by the Georgia Public Service Commission provided a right of civil action against Infinite, but we disagree. The administrative rule allows a consumer to file a complaint with the Commission and pursue an administrative process for the resolution of a dispute. Ga. Comp. R. & Regs. 515-7-10.06(2). The rule does not create a private right of

action.  See Parris v. State Farm Mut. Auto. Insur., 229 Ga. App. 522, 524, 494 S.E.2d 244, 246 (Ct. App. 1997).  The district court did not err when it dismissed this count of the complaint.

*B. The Complaint That Infinite Violated the Georgia Fair Business Practices Act Was Untimely.*

Under the Georgia Fair Business Practices Act, a consumer must commence an action within two years after he "knew or should have known of the occurrence of the alleged violation" or "the termination of any proceeding or action by the State of Georgia, whichever is later."  Ga. Code Ann. § 10-1-401(a).  Georgia courts have required that "[a]ctions under the Fair Business Practices Act must be commenced within two years of accrual."  Sandy Springs Toyota v. Classic Cadillac Atlanta Corp., 269 Ga. App. 470, 471, 604 S.E.2d 303, 305 (Ct. App. 2004).  An action accrues when the business commits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions," Ga. Code Ann. § 10-1-393(a), and the consumer suffers an injury as a result of his reliance on the deception.  Tiismann v. Linda Martin Homes Corp., 279 Ga. 137, 139, 610 S.E.2d 68, 70 (2005).

The district court correctly dismissed the dry cleaners' complaint as barred by the two-year statute of limitation.  The dry cleaners waited until July 31, 2008, to complain about misdeeds allegedly committed by Infinite in October 2005.  The

7

dry cleaners argue that their complaint was timely because the "claims could not accrue until the [Commission's] investigation was terminated" in the "fall of 2007," but we disagree. The dry cleaners never alleged that the Commission initiated "any proceeding or action," Ga. Code Ann. § 10-1-401(a)(2), that would postpone the accrual date. The complaint under the Act was untimely.

*C. The Dry Cleaners Did Not Have a Right of Action Under Section 51-1-8.*

The dry cleaners argue that they may recover in tort under section 51-1-8 of the Code of Georgia, but that section "does not confer a separate cause of action in tort upon one who has suffered a breach of a legal or a private duty." Parris, 229 Ga. App. at 524, 494 S.E.2d at 246. That section instead "simply authorizes the recovery of damages for the breach of a legal duty otherwise created." Id. Because the dry cleaners' right to recover is contingent on claims that Infinite violated rule 515-7-10.06 and the Fair Business Practices Act, and these claims fail, the district court did not err by dismissing the complaint for relief under section 51-1-8.

*D. The Dry Cleaners Failed to Establish They Were Entitled to Relief Under the Georgia Uniform Deceptive Trade Practices Act.*

The district court did not err by dismissing the dry cleaners' complaint under the Georgia Deceptive Trade Practices Act, which provides injunctive relief as its sole remedy. Under that Act, the dry cleaners had to allege they were "likely to be

8

damaged by a deceptive trade practice of" Infinite. Ga. Code Ann. § 10-1-373(a). The dry cleaners complained that in October 2005 Infinite disseminated information about the future price of natural gas, but that act did not pose any future harm. See Moore-Davis Motors, Inc. v. Joyner, 252 Ga. App. 617, 619, 556 S.E.2d 137, 140 (Ct. App. 2001). In its response to the motion to dismiss, the dry cleaners argued that they were "entitled to an injunction . . . to the extent Infinite continue[d] to engage in . . . disseminati[ng] . . . deceptive misrepresentations," but the dry cleaners are not entitled to injunctive relief based on a hypothetical future harm. See Wiggin v. Horne, 270 Ga. 571, 572, 512 S.E.2d 247, 248 (1999) ("Allegations of mere speculative or contingent injuries, with nothing to show that in fact they will happen, are insufficient to support a prayer for injunctive relief.").

*E. The Dry Cleaners Failed to State a Claim That Infinite Made a Negligent Misrepresentation.*

The district court also did not err by dismissing the dry cleaners' complaint that Infinite made a negligent misrepresentation. To state a claim for negligent misrepresentation, the dry cleaners had to allege that Infinite supplied false information on which the dry cleaners reasonably relied to their detriment. Futch v. Lowndes County, 297 Ga. App. 308, 312, 676 S.E.2d 892, 896 (Ct. App. 2009). The dry cleaners allegedly relied on representations by Infinite about "the likely [upward] trend in the cost of natural gas," but that prediction is not actionable. The

9

dry cleaners, who had to exercise due diligence in relying on the information, Artzner v. A & A Exterminators, Inc., 242 Ga. App. 766, 771–72, 531 S.E.2d 200, 205 (Ct. App. 2000), could not justifiably rely on Infinite's speculation about the future price of natural gas, an event over which Infinite had no control. See Marler v. Dancing Water Lakes, Inc., 167 Ga. App. 99, 100, 305 S.E.2d 876, 877 (Ct. App. 1983) ("'Where the representation consists of general commendations or mere expressions of opinion, hope, expectation, and the like, and where it relates to matters which from their nature, situation, or time, can not be supposed to be within the knowledge or under the power of the party making the statement, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth.'" (quoting Rogers v. Sinclair Ref. Co., 49 Ga. App. 72, 75, 174 S.E. 207 (Ct. App. 1934)).

*F. The Dry Cleaners Could Not Recover Under the Theory of Unjust Enrichment.*

The dry cleaners alleged that Infinite was unjustly enriched when it collected exorbitant charges for its natural gas, but this argument fails. The doctrine of unjust enrichment allows a party to seek the return of or payment for transferring a good or providing a service for which he has not received compensation. Morris v. Britt, 275 Ga. App. 293, 294, 620 S.E.2d 422, 424 (Ct. App. 2005). That doctrine

10

does not apply here. The dry cleaners do not seek compensation for some benefit they conferred on Infinite. The dry cleaners complain of tortious conduct by Infinite. The dry cleaners allege that Infinite "wrongfully switched customers to the [Association] Master Contract without their consent and wrongfully charged them the inflated therm rates." "[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." Tidikis v. Network for Med. Commc'ns & Research, LLC, 274 Ga. App. 807, 811, 619 S.E.2d 481, 485 (Ct. App. 2005). The district court did not err by dismissing the complaint of unjust enrichment.

## IV. CONCLUSION

The dismissal of the dry cleaners' amended complaint with prejudice is **AFFIRMED**.

11