**PHL VARIABLE INSURANCE COMPANY, Plaintiff**

v.

**Faye Keith JOLLY; The Faye Keith Jolly Irrevocable Life Insurance Trust, through its trustee Kenneth E. Shapiro, Esq., Defendants.**

**Civil Action No. 1:08–cv–3220–GET.**

United States District Court, N.D. Georgia, Atlanta Division.

April 14, 2011.

Bradley J. Aiken, David T. McDowell, Jarrett E. Ganer, Jessica L. Wilson, Edison, McDowell & Hetherington LLP, Houston, TX, Alycen A. Moss, Kenan G. Loomis, Cozen & O'Connor, Atlanta, GA, for Plaintiff.

Brian H. Koch, Jesus E. Cuza, Greenberg Traurig, Fort Lauderdale, FL, David W. Long–Daniels, Greenberg Traurig, Atlanta, GA, for Defendants.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled matter is presently before the court on:

(1) Defendant The Faye Keith Jolly Irrevocable Life Insurance Trust's motion for summary judgment [docket no. 114];

(2) Plaintiff's motion for summary judgment [docket no. 116];

(3) Plaintiff's motion for leave to file excess pages [docket no. 122].

On October 15, 2008, plaintiff filed this action against defendants Faye Keith Jolly ("Jolly") and the Faye Keith Jolly Irrevocable Life Insurance Trust, through its trustee, Kenneth E. Shapiro ("the Trust"). Plaintiff alleged Jolly and the Trust provided material information during the application process that was "materially incorrect and/or fraudulent." Plaintiff asserted claims for declaratory judgment against the Trust (Count I), negligent misrepresentation against Jolly and the Trust (Count II), fraud against Jolly (Count III), and conspiracy against Jolly and the Trust (Count IV). On December 5, 2008, the Trust filed an answer to the complaint. On May 22, 2009, this court issued an order granting plaintiff's motion for default judgment against defendant Jolly. On October 26, 2009, the court issued an order granting plaintiff's motion to deposit funds into the registry of the court. On July 9, 2010, the court issued an order granting plaintiffs motion for judgment on partial findings. The court directed the Clerk of Court to enter a declaratory judgment in favor of plaintiff and against the Trust that the PHL Policy Number 97519549 is rescinded, *ab initio*, no longer exists, and is completely without legal effect. The order denied without prejudice the Trust's motion for disbursement of funds.

The sole remaining claims in this action are Count II negligent misrepresentation and Count IV conspiracy against the Trust. On September 27, 2010, plaintiff and the Trust filed motions for summary judgment. On October 22, 2010, plaintiff filed a motion for leave to file excess pages.

### Motion for leave to file excess pages

Plaintiff moves to exceed the twenty-five page limitation for its brief filed in support of its motion for summary judgment. Defendant objects to the motion for leave and requests that the court strike plaintiff's

brief. Having considered the plaintiff's motion, the court declines to strike the plaintiff's brief. Plaintiff's motion for leave to file excess pages [docket no. 122] is GRANTED. The court has considered plaintiff's brief in support of its motion for summary judgment in reviewing the pending motions.

### Motions for summary judgment

#### Standard

Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548; *see also U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991).

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of material fact. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. 2505; *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. 2505. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment motion must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

#### Facts

In light of the foregoing standard, the court finds the following facts for the purpose of resolving the parties' motions for summary judgment only. On or about October 10, 2006, The Faye Keith Jolly Irrevocable Life Insurance Trust ("Trust") was created, naming Kenneth Shapiro as Trustee ("Trustee") and the Jolly Family Trust (with attorney A.J. Block, Jr. as its Trustee) as beneficiary. The Trust was created to receive, hold and distribute proceeds from an insurance policy, and the Trust became owner of Phoenix Policy No. 97519549 ("the Policy"). Keith Jolly indicated that the Policy was for the protection of his family after he is gone. The Trust applied in writing to plaintiff seeking the issuance of the Policy, insuring the life of Faye Keith Jolly ("the Application").

The Application sought information about Mr. Jolly's background/ income, and net worth.

On or about February 2, 2007, Martin Wetzler, an insurance agent approved by plaintiff to sell insurance policies, submitted to plaintiff an application for a life insurance policy (the "Application") that would insure the life of Faye Keith Jolly ("Mr. Jolly"). On or about March 15, 2007, plaintiff issued the Policy that insured the life of Mr. Jolly. The Policy had an effective date of October 17, 2006.

At all material times, the sole owner of the Policy was the Trust. At all material times, Mr. Shapiro was the sole trustee of the Trust.

The Application, drafted by plaintiff, provides in "Section XII—Signature," that: "I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded ("the Statement")." Section I of the Application identifies Mr. Jolly as the "Proposed Insured," and the Trust as the "Owner." In Section XII of the Application, the "Owner" is only to separately sign the Application if that owner is "other than Proposed Insured." Section XII contains the signatures of both Faye Keith Jolly and the Trustee.

The Application indicates that the statements made in Part I of the Application are those of Mr. Jolly. The statements in Part I of the Application include the alleged misrepresentations about Mr. Jolly's net worth and income upon which plaintiff, at least in part, has predicated its claims against the Trust.

Scott Grandmont, Chief Underwriter for the plaintiff, stated that plaintiff would not have issued the Policy in dispute had the Trust failed to make the Statement referenced above. Plaintiff contends that such a Statement was material to plaintiff's decision to issue the Policy. According to Grandmont, plaintiff would not have issued the policy in dispute if Plaintiff had known "that the Trust had no basis from which to make the [Statement]."

Section XII of the Application, denominated "Signature," states "I understand that if there is a change in my health or physical condition, or if I visit a physician or am hospitalized ... I will inform the Company as soon as possible." The references to "I" and "my" in the Application are to "the insured life," Mr. Jolly, and not to the Trust or the Trustee, Mr. Shapiro.

The sole representation by the Trustee in the Application is that "I have reviewed this application and the statements herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded." When Mr. Shapiro signed the Application on behalf of the Trust, he had no knowledge of any facts that were inconsistent with Mr. Jolly's representations about his net worth and income. Mr. Jolly never told Mr. Shapiro that his net worth was other than as Mr. Jolly had represented in the Application or that he had ever been arrested. Prior to the issuance of the Policy in March 2007, Mr. Jolly never even communicated with Mr. Shapiro verbally or in writing, Mr. Shapiro expressly denied that he ever conspired or reached any kind of mutual understanding with Mr. Jolly regarding the alleged misrepresentations in the Application. Mr. Shapiro never discussed with Mr. Jolly, or anyone else, the Application for the Policy or any other

statements made in the Application before the Policy was issued.

The Trustee never witnessed Jolly signing the Application. The Trustee also had no specific knowledge as to who recorded the information on the Application but he believes that Mr. Jolly had signed the Application at the time it was given to him to sign. The Trustee does not remember specifically whether he focused on the representations of Jolly's net worth or income or whether he even noticed that at the time he signed the Application.

The Trustee testified that (1) he performed no due diligence or independent investigation regarding the representations in the Application; (2) he did not communicate with Jolly's financial advisor or attorney; (3) he never inquired into the components of Mr. Jolly's net worth, (4) he never inquired as to what constituted Mr. Jolly's alleged billion dollar fortune; (5) he never viewed any appraisals of the gems allegedly forming the bulk of Mr. Jolly's wealth; (6) he never spoke to the insurance producers that provided the Application to plaintiff; (7) he did not have any oral or written communications with Mr. Block prior to Policy issuance; and (8) he never communicated with Mr. Jolly about the application. The Trustee also did not represent to the plaintiff that he had performed any of these actions.

Plaintiff would not have approved the Policy without conducting the underwriting on the Policy. The primary objective of plaintiff's Underwriting Department is to ascertain whether a particular Policy Application and supporting documents represent an insurable risk. If an Application and supporting documents do not represent an insurable risk, plaintiff will not issue a policy. During this underwriting the plaintiff reviewed, in addition to the Application, the following documents to determine whether to issue the Policy; (1)

two February 2, 2007 letters to PHL prepared by Martin Wetzler; (2) a personal information letter prepared by Mr. Jolly; (3) a December 13, 2006, letter from Mr. Block attesting to Jolly's ownership of over $600 million worth of emeralds through his company Troy International, Inc.; (4) an information packet related to Troy International, Inc.; (5) a letter of safekeeping from a bonded warehouse regarding the emeralds; (6) alleged appraisals from gemologist Dean L. Honeycutt; (7) a telephone interview commissioned by PHL; and (8) a second letter from Mr. Block dated February 7, 2007. Plaintiff would not have approved the Policy if only the Application had been submitted to PHL.

Most, if not all, of the additional documents reviewed were provided to plaintiff by Martin Wetzler. None of the additional documents were provided to the Trust or disclosed to the Trustee at any time prior to plaintiffs filing of the complaint in this action. The Trustee was not copied on any communications between plaintiff and Martin Wetzler, the agent of record for the Policy, at any time prior to the issuance of the Policy.

Plaintiff did not take steps to see if the documents that were being submitted to the company were actually real documents or if they were, instead, fabricated or forged. The protocol plaintiff follows, however, "is to drive to multiple parties to secure documentation with the assumption that not everybody is going to perpetrator (sic) a fraud against you."

During the underwriting for the Policy, plaintiff never spoke to Mr. Jolly and never tried to contact him. Plaintiff never spoke to Mr. Shapiro and never attempted to communicate with him regarding Mr. Jolly's net worth, income or criminal history record before it issued the Policy. Plaintiff never spoke to A.J. Block, Jr. (Mr. Jolly's personal attorney) and never

tried to contact him. Plaintiff never spoke to Dean Honeycutt (the purported appraiser of Mr. Jolly's emeralds) and never tried to contact him. Verification of Mr. Jolly's criminal history representation in the Application was not part of plaintiff's underwriting due diligence. The alleged criminal history of Mr. Jolly involved a conviction for check fraud in 1976. Mr. Grandmont, the head underwriter at plaintiff, stated that plaintiff still would have approved the Policy had Mr. Jolly's conviction more than 30 years ago been disclosed during the underwriting of the Policy.

A "red flag" was raised to plaintiff in connection with the Application because, despite the Application listing Mr. Jolly's net worth at $1 billion, plaintiff had medical records for Mr. Jolly indicating he was employed by a cemetery. Another "red flag" was raised to plaintiff in connection with the Application because plaintiff had medical records for Mr. Jolly indicating he was employed "in a telephone capacity" for a friend's import-export business. As a result of inconsistencies within the documentation submitted, plaintiff required and received documents from several sources affirming Mr. Jolly's finances before determining whether to issue the Policy.

Even though the primary portion of Mr. Jolly's alleged net worth was the purported value of uncut emeralds, and even though reliance on such an "esoteric" evaluation for a proposed insured's net worth was "uncharted territory," plaintiff never attempted to contact the appraiser or the British storage company, or otherwise verify in any manner either the genuineness or accuracy of the appraisal, the British storage company's putative inventory of those emeralds or the individual authenticity of any other documents. Plaintiff never attempted to employ what it considered "traditional tools" of income and net worth

verification by obtaining information about Mr. Jolly's bank accounts or primary residence, or by contacting Mr. Jolly's accountant to obtain net worth and income information.

Plaintiff's initial May 12, 2006 inspection report on Mr. Jolly before he and the Trust had signed the Application showed Mr. Jolly's net worth to be $200, 000, 000, 00 higher than Mr. Jolly represented eight months later on the Application. The inspection report also showed Mr. Jolly's annual income to be $8,000,000.00 higher than he represented in the Application. Plaintiff admitted that these inconsistencies would raise a "red flag" for an underwriter and require plaintiff to undertake "additional due diligence."

Plaintiff itself recognized that it needed third-party verification of Mr. Jolly's income and net worth, and specifically requested to Mr. Wetzler that Mr. Jolly provide to plaintiff his tax returns and audited financial statements "to put some reliance on the figures that were provided to us regarding his income and net worth" and "to add additional credibility to the client's statements relative to income and net worth."

Despite Mr. Wetzler informing plaintiff that Mr. Jolly's tax returns and other financial statements would not be provided, plaintiff still issued the Policy. According to plaintiff, it received additional information and documentation that plaintiff felt was equal to or greater in value than the requested tax returns and financial statements in affirming Mr. Jolly's financial status.

The November 18, 2004 appraisal by Dean Honeycutt affirming the emeralds' worth, submitted to plaintiff, was forged. Dean Honeycutt verified that the only legitimate appraisal of the emeralds he performed was in the mid–1990's and related to obtaining insurance. No documents

concerning Honeycutt were provided or disclosed to the Trustee at any time prior to plaintiff's filing of the Complaint.

Once plaintiff issued the Policy, plaintiff paid $412,116.55 in commissions to its sales agent. Plaintiff has incurred over $400,000 in attorney's fees in this action.

### Discussion

Defendant Trust moves for summary judgment as to plaintiff's remaining claims against it. Defendant argues that there is no evidence to support these claims against the Trust and that the allegedly false representations were made by Mr. Jolly, not the Trust, and the Trust had no knowledge or belief that the statements were untrue. Plaintiff moves for summary judgment on its claim for negligent misrepresentation, seeking a return of the Policy premiums as an offset to damages incurred by plaintiff as a result of the Policy's issuance. Plaintiff also seeks an equitable award of the Policy premiums, as well as other monetary damages incurred by plaintiff as a result of the Policy's issuance.

### Conspiracy

With regard to defendant's motion for summary judgment as to plaintiff's conspiracy claim, plaintiff points the court to no evidence which contradicts the Trustee's express denial that he ever conspired or reached any kind of mutual understanding with anyone regarding the alleged misrepresentations in the Application. Furthermore, there is no evidence that Mr. Jolly and the Trustee communicated with each other about any subject before signing the Application. In fact, plaintiff did not directly respond to defendant's motion for summary judgment on plaintiff's conspiracy claim. Therefore, having considered defendant's motion for summary judgment as to conspiracy (Count IV), the court GRANTS defendant's motion for summary judgment on Count IV.

### Negligent misrepresentation

▆▆▆▆ In order to establish a claim for negligent misrepresentation, the plaintiff must show "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown, (2) such person's reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727 (1997). "To establish reasonable reliance under Georgia law as to either fraud or negligent misrepresentation, a plaintiff must show that it exercised due diligence," *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1289–90 (11th Cir.2007) (affirming summary judgment because the plaintiff's "due diligence failure was so egregious that [plaintiff] could not have reasonably relied on any representation" by the defendant). "Georgia law places a significant due diligence burden on sophisticated parties engaged in arms-length transactions," *Id.* Although questions of due diligence are generally for a jury, "a court can find that a party has failed to exercise due diligence as a matter of law where due diligence failures are particularly egregious." *Id.*

▆▆▆▆ "A plaintiff cannot show reasonable reliance if he has failed to exercise due diligence to discover the information withheld." *Powell Duffryn Terminals, Inc. v. Calgon Carbon Corp.*, 4 F.Supp.2d 1198, 1205 (S.D.Ga.1998) (noting plaintiff had concerns about the safe use of defendant's product yet only made a cursory inspection of defendant's system). Where a plaintiff did not draw on information which was available to it and within its own company and the industry generally, there can be no reasonable reliance as a matter of law. *Id.*

■ The Eleventh Circuit has found that when an insurance form, as in this case, includes qualifying language such as "all such statements made by the proposed insured ... are full, complete, and true *to the best knowledge and belief* of the undersigned ..." (emphasis added), it shifts the focus "in a determination of the truth or falsity of an applicant's statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true. Thus [the applicant's] answer must be assessed in the light of his actual knowledge and belief...." *See William Penn Life Ins. Co. v. Sands,* 912 F.2d 1359, 1363 (11th Cir.1990) (quoting *Skinner v. Aetna Life and Cas.,* 804 F.2d 148 (D.C.Cir.1986)). The Eleventh Circuit further found that "what the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but *only* so far as that belief is not clearly contradicted by the factual knowledge on which it is based." *Id.* at 1365 (emphasis on original). When an alleged misrepresentation is based on the defendant's knowledge and belief regarding information the defendant does not control, then "the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth." *Byung Ho Cheoun v. Infinite Energy, Inc.,* 363 Fed.Appx. 691, 696 (11th Cir.2010) (affirming dismissal of negligent misrepresentation claim).

The undisputed evidence shows that the Trustee had no knowledge of any facts about Mr. Jolly's income, net worth or criminal history which would contradict Mr. Jolly's representations in the Application. Plaintiff, however, asserts that it is not alleging that the Trust made false financial representations. Rather, plaintiff alleges that the Trust negligently "affirmed" that it had personal knowledge as to the source and veracity of the financial representations in the Application when it clearly did not. Plaintiff contends that its negligent misrepresentation claim is based on this "misrepresentation."

Plaintiff argues that it requires the proposed owner of an insurance policy to verify the source of all representations made in an insurance Application and the accuracy of those representations to protect plaintiff from issuing insurance policies on uninsurable risks by ensuring that the representations contained in the Application can be relied upon. Specifically, plaintiff argues that the Trustee "had no basis from which to state to [plaintiff] that 'the statements made herein are those of the proposed insured" because the Trustee conceded in his deposition that he never met Jolly, never spoke to Jolly prior to the issuance of the Policy and never engaged in any written communications with Jolly or personally witnessed him signing the application and had no knowledge as to who recorded the information on the Application.

Plaintiff, however, fails to point the court to any support in the record where defendant represented in the Application that he had done any of these acts. The language of the Application, prepared by plaintiff, does not support a finding that defendant was making such representations as characterized by the plaintiff. Furthermore, the evidence cited by plaintiff does not raise a question of fact that defendant "had no basis from which to state to [plaintiff] that 'the statements made herein are those of the proposed insured.'" There is no evidence to contradict the Trustee's Statement that the representations in the Application were not those of the Trustee or that the Trustee believed that any representations had been made by Jolly.

■ Likewise, defendant's alleged failure to disclose information to plaintiff is not actionable as negligent misrepresentation absent proof of a false statement by the defendant. *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir.2007) (holding defendant failed to make a false statement). A failure to obtain and supply information does not state a claim for negligent misrepresentation. *Futch v. Lowndes County*, 297 Ga.App., 308, 312, 676 S.E.2d 892 (2009) (noting plaintiff had ability to inspect and make his own determination on issue).

■ The Trustee did not affirmatively verify the stated amount of the insured's net worth and income. The Trust only represented that the information supplied by Jolly was true "to the best knowledge and belief of" the Trust, The Eleventh Circuit squarely has held that this same limiting language in an insurance application requires that the truth of the applicant's representations in the application be determined by what the applicant "believed to be true" when he signed the application. *See, Sands,* 912 F.2d at 1363. Plaintiff fails to point the court to any evidence that when the Trustee signed the Application, he either believed that Jolly's statements in the application about his net worth and income were untrue or had knowledge of facts which clearly contradicted the truth of the statements made in the Application.

Plaintiff cites several cases for the proposition that an insurer is not required to show the falsity of a statement made by an applicant even when the statement is made on the "best knowledge and belief" of the applicant, but only must show that the applicant negligently supplied false information. *See e.g. FCCI Ins. Group v. Rodgers Metal Craft, Inc.,* No. 4:06cv0107 (CDL), 2008 WL 2951992 at *9 (M.D.Ga. July 28, 2008); *Avemco Ins. Co. v. Rollins,* 380 F.Supp. 869, 873 (N.D.Ga.1974) (holding there is no legal requirement for an insurance company to determine the truth or falsity of representations made in an application for insurance); *White v. American Family Life Assur. Co.,* 284 Ga.App. 58, 62, 643 S.E.2d 298 (2007) (noting declaration of "best of my knowledge and belief" is for the benefit of the insurance company to ensure that the applicant is relying on his own personal knowledge and belief and not the knowledge of someone else such as an agent whose insertion of material misrepresentations would be binding on the company); *Graphic Arts Mut. Ins. Co. v. Pritchett,* 220 Ga.App. 430, 432, 469 S.E.2d 199 (1995) (an insurer is allowed to rely on the truthfulness of the statements made in an insurance policy); *Jennings v. Life Ins. Co. of Georgia,* 212 Ga.App. 140, 441 S.E.2d 479 (1994) (reviewing summary judgment against a beneficiary where an insured's application for insurance contained a misrepresentation and the insured has an opportunity to review the application).

These cases, however, are distinguishable as they address the circumstances which would permit an insurer to void a policy or deny coverage but do not address the required elements for a negligent misrepresentation claim. *Cf. White,* 284 Ga. App. at 62, 643 S.E.2d 298 (noting a declaration "to best of my knowledge and belief" in context of an insurance application "may act as a shield protecting the applicant if accused of intentional fraud" even though not a "sword" to require insurers to provide benefits which by statute would otherwise be disallowed). In this case, however, the Policy already has been rescinded and, for the purposes of these motions, the inquiry is whether plaintiff has pointed the court to evidence which would create a question of fact as to

whether defendant negligently supplied false information. The court finds that plaintiff has not met this burden.

■ Likewise, plaintiff cannot show that it justifiably relied on any alleged misrepresentations in the application because plaintiff's corporate representative admitted that it would not "have approved the Policy if only the Application had been submitted to the company." Furthermore, where the alleged misrepresentation is based on the defendant's knowledge and belief regarding information the defendant does not control, "the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examine for himself so as to ascertain the truth." *Byung Ho Cheoun,* 363 Fed.Appx. at 696.

■ Finally, although proximate cause is usually a matter for the jury, the court finds that plaintiff fails to raise a question of fact as to this element of its negligent misrepresentation claim. Even assuming that defendant negligently "affirm[ed] the veracity of the representations made in the Application" such "affirmation" could not have caused plaintiff's damages where plaintiff conceded that it would not have issued the Policy based on the Application alone and plaintiff reviewed additional documentation (none of which was made available to the Trustee) which plaintiff determined, despite several "red flags," supported Jolly's representations of wealth in the Application.

Therefore, having considered the arguments of the parties, the court finds that plaintiff fails to present sufficient evidence to create a question of fact that defendant negligently made misrepresentations on the insurance Application which caused plaintiff damage. Likewise, the court finds no factual, legal or equitable basis for permitting plaintiff to obtain policy premiums being held in the registry of the court absent a judgment in plaintiff's favor on Counts II or IV. Accordingly, for the foregoing reasons, the court hereby GRANTS defendant's motion for summary judgment [docket no. 114] and DENIES plaintiff's motion for summary judgment [docket no. 116].

As the court has acknowledged in its July 9, 2010 order, exigent circumstances exist that caution against the immediate disbursement of the funds held in the registry of the court despite the court's ruling in defendant's favor on all remaining claims. The Policy was the sole asset of the Trust and the potential damages plaintiff sought in this action exceed the premiums plaintiff received pursuant to the Policy. Should plaintiff successfully appeal this court's rulings, the premiums provide its only source of monetary recovery.

Accordingly, the court ORDERS that the premiums remain in the registry of the court until further order of the court to permit plaintiff an opportunity to file a notice of appeal from this court's rulings. If no such notice of appeal is filed, the defendant is DIRECTED to file a motion for disbursement of funds within FIFTEEN (15) DAYS from the expiration of plaintiff's time to file a notice of appeal. If a notice of appeal is filed, the party that succeeds on appeal is DIRECTED to file a motion for disbursement of funds within FIFTEEN (15) DAYS from the date the appeal is concluded.

*Summary*

(1) Defendant The Faye Keith Jolly Irrevocable Life Insurance Trust's motion for summary judgment [docket no. 114] is **GRANTED;**

(2) Plaintiff's motion for summary judgment [docket no. 116] is **DENIED;**

(3) Plaintiff's motion for leave to file excess pages [docket no. 122] is **GRANTED.**

The court **ORDERS** that the premiums remain in the registry of the court until further order of the court to permit plaintiff an opportunity to file a notice of appeal from this court's rulings. If no such notice of appeal is filed, the defendant is **DIRECTED** to file a motion for disbursement of funds within **FIFTEEN (15) DAYS** from the expiration of plaintiff's time to file a notice of appeal. If a notice of appeal is filed, the party that succeeds on appeal is **DIRECTED** to file a motion for disbursement of funds within **FIFTEEN (15) DAYS** from the date the appeal is concluded.